**James L. GOULD, on behalf of himself and others similarly situated, Plaintiffs,**

v.

**NATIONAL LIFE INSURANCE COMPANY, Defendant.**

**No. Civ.A. 97–A–1370–N.**

United States District Court, M.D. Alabama, Northern Division.

Jan. 13, 1998.

Jere L. Beasley, W. Daniel Mils, Montgomery, AL, for plaintiffs.

James N. Walter, Thomas S. Lawson, Barbara Gilbert, Montgomery, AL, Jeffrey Rudman, John Fabiano, Boston, MA, for defendant.

### *MEMORANDUM OPINION*

ALBRITTON, District Judge.

There are five motions pending before the court in this case. Although there are several disputed issues in the briefs, the parties agree on at least one thing—they want this case to go elsewhere. Plaintiff wants the case remanded to the Montgomery County

Circuit Court, where it was originally filed. Defendant wants the court to transfer the case to Vermont's federal district court, where there are similar consolidated actions. Each side wants the court to rule on its motion first, asking the court to stay a decision on the other side's motion until after the case is remanded or transferred.[1]

For the reasons discussed herein, the court decides that transfer of this action to the Federal District Court for the District of Vermont is the most appropriate action. Plaintiff's motion to stay the court's decision to transfer is DENIED. Defendant's motion to transfer and its motion to stay the decision to remand until after a decision to transfer are GRANTED. All other pending motions, including the motion to remand, are transferred along with the case.

## I. *FACTS*

This case was originally filed as a nation-wide class action on August 20, 1997, in Montgomery County, Alabama, Circuit Court. The plaintiff brings our claims: (1) fraud, (2) fraudulent suppression and concealment, (3) unjust enrichment, and (4) breach of contract. The allegations arise from sales of certain "vanishing premium" life insurance policies. Named as defendants are National Life insurance Company of Vermont, and twenty fictitious defendants. Plaintiff has attempted to "de-federalize" the

action, disclaiming all aspects of federal question jurisdiction and attempting to disclaim an amount of damages which may make this case appropriate for federal diversity jurisdiction.[2]

Despite Plaintiff's attempts to strip the case of federal jurisdiction, defendant National Life removed the action to federal court on September 10, and shortly thereafter, sought to have the case transferred to the Federal District Court for the District of Vermont. Defendant seeks to have the action transferred to Vermont for two basic reasons: (1) most of the witnesses, documents, and policy holders are located closer to National Life's headquarters in Montpelier, Vermont, and (2) there is already a pending, nation-wide class action involving many of the same allegations in Vermont District Court. *See Defendant National Life Insurance Company of Vermont's Motion for Transfer of Venue, September 19, 1997.*

In fact, Vermont's district court has consolidated two cases involving these same facts. *See Consolidation Order, No. 97–CV–314 (D.Vt., December 11, 1997) (consolidating Birdsall v. National Life, 97–CV–314, with Akerley v. National Life, No. 97–CV–364).*[3] The first consolidated case, *Birdsall,* was originally filed in the 17th Judicial District Court of Louisiana, Parish of LaFourche, as a nationwide class action on April 17, 1997—four months before the filing

1. The pending motions are as follows: Defendant's Motion for Transfer of Venue was filed on September 19, 1997. Plaintiff's Motion to Remand was filed on October 1, 1997. Plaintiff asked the court to stay a decision on the motion to transfer on October 3, 1997. On November 12, 1997, Defendant asked the court to stay all proceedings and discovery pending a ruling on the Motion to Transfer. Both sides have submitted various responses and replies to the motions, and they are properly under submission.

In addition, Defendant submitted a motion on November 12, 1997, to vacate a conditional class certification order entered by the Montgomery County Circuit Court, and to stay all class-related discovery. In addition, there was also a motion filed by the Plaintiffs on October 30, 1997, styled "Plaintiff's Motion in Opposition to Defendant's Motion for Extension of Time." The latter motion was made moot by this court's order of Novem-

ber 4, 1997. The disputes over class certification will be transferred along with the case.

2. For a discussion of "de-federalized" complaints, see this court's decision in *Crawford v. American Bankers Ins. Co. of Fla.,* 987 F.Supp. 1408 (M.D.Ala.1997).

3. A copy of the court's order was furnished to this court by the Defendant in its *Supplemental Submission in Support of Defendant National Life Insurance Company's Motions to Stay and Transfer* filed on December 18, 1997. It is somewhat unclear from the court's copy, but it appears that the Vermont District Court may have also established a procedure for the consolidation of any subsequently filed or transferred case which involves the same facts. Whether the court did establish such a procedure is not determinative of this court's decision, however.

of this case. *See Birdsall Complaint.*[4] *Birdsall* was subsequently removed to federal court and transferred to Vermont, without opposition. *See Order Transferring Venue, No. 97–1691 (E.D .La., Sept. 15, 1997).*[5] *Akerley* was filed as a nation-wide class action in the District of Vermont on November 5, 1997. *See Akerley Complaint.*[6]

Besides the consolidated nation-wide class action, the Vermont District Court also has pending before it two other nation-wide class actions which concern the same facts. These are *Moore v. National Life Insurance Company*, No. 3–97–0998 (M.D.Tenn.), which was filed on September 26, 1997, in the Middle District of Tennessee. *See Moore Complaint.*[7] Judge Campbell of the Middle District of Tennessee subsequently transferred *Moore* to the District of Vermont on December 5, 1997. *See Order, Moore v. Nat'l Life (M.D.Tenn.).*[8] Judge Campbell's decision was based on his "desire to avoid multiplicity of litigation involving a single transaction." *Moore Memorandum at 2, (M.D.Tenn., Dec. 5, 1997) (citing to West Gulf Maritime Assoc. v. ILA Deep Sea Local 24*, 751 F.2d 721, 728–29 (5th Cir.1985)).[9] Another nation-wide class action has also been filed subsequently in the District of Vermont. That action, styled *Venne v. National Life Insurance Co.*, No. 1:97–CV–399 (D.Vt.), was filed on November 24, 1997. *See Venne Complaint.*[10] It also concerns the same facts as the present suit.

## II. *STANDARD OF REVIEW*

Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to a district where it could have been brought for: (1) the convenience of the parties; (2) the convenience of the witnesses; and, (3) the interests of justice. *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir.1996). The Eleventh Circuit has determined that a court should be somewhat restrictive in transferring actions; indeed, "[t]he plaintiffs choice of forum should not be disturbed unless" the movant can show that "it is *clearly outweighed* by other considerations." *Id.*, quoting *Howell v. Tanner*, 650 F.2d 610 (5th Cir. Unit B 1981), cert. den. 456 U.S. 918, 102 S.Ct. 1775, 72 L.Ed.2d 178 (1982) (emphasis added).

Nevertheless, the decision whether to transfer is within the discretion of the trial court, and each case should be decided on its particular facts. *See Brown v. Connecticut General Life Insurance Co.*, 934 F.2d 1193 (11th Cir.1991); *Hutchens v. Bill Heard Chevrolet Co.*, 928 F.Supp. 1089 (M.D.Ala. 1996). When making this decision, courts generally rely on a number of factors including: (1) the plaintiffs choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses, and the availability of witnesses through compulsory process; (4) the location of documents and other sources

---

4. A copy of the *Birdsall* complaint is attached as exhibit A to *Def. Nat'l Life Ins. Co.'s Memo. in Opp. to Plaintiff's Motion to Stay Def.'s Motion to Transfer Pending the Court's Decision on Plaintiff's Motion to Remand, Nov. 12, 1997.*

5. A copy of this order is attached as Exh. E to *Def. Nat'l Life Ins. Co. of Vt.'s Memo. in Support of Motion for Transfer of Venue, Sept. 19, 1997.*

6. A copy of the *Akerley* complaint is attached as Exh. C to *Def. Nat'l Life Ins. Co.'s Memo. in Opp. to Plaintiff's Motion to Stay Def.'s Motion to Transfer Pending the Court's Decision on Plaintiff's Motion to Remand, Nov. 12, 1997.*

7. A copy of the *Moore* complaint is attached as Exh. B to *Def. Nat'l Life Ins. Co.'s Memo. in Opp. to Plaintiff's Motion to Stay Defendant's Motion to Transfer Pending the Court's Decision on Plaintiff's Motion to Remand, Nov. 12, 1997.*

8. A copy of this order, along with the memorandum opinion, is attached as Exh. A to *Def. Nat'l Life Ins. Co.'s Notice of Recent Decision, Dec. 10, 1997.*

9. Judge Campbell compared the *Moore* action to "three similar [class action] lawsuits [that] have now been filed against Defendant in the District Court of Vermont," and found them all to concern "the same alleged scheme and misconduct." *Moore Memorandum at 2.* Although Judge Campbell does not name these three Vermont cases, *Birdsall, Akerley, and Venne* were all pending in Vermont at that time.

10. A copy of the complaint in *Venne* is attached as Exh. A to *Def. Nat'l Life Ins. Co.'s Second Supp. Memo. of Law in Support of Motion for Transfer of Venue, Dec. 3, 1997.*

of proof; (5) the relative ability of the parties to bear the expense of changing the forum; and (6) trial efficiency and expense to the justice system. *See Gulf Oil v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) (decided before enactment of § 1404); *Tampa Bay Storm, Inc. v. Arena Football League, Inc.*, 932 F.Supp. 281, 282 (M.D.Fla. 1996).

## III. DISCUSSION

There is no question that this action could have been brought in the District of Vermont. Plaintiff has not contested this, and, indeed could not, given that Vermont is the home location for National Life. Therefore, the court may move beyond this threshold question of whether the action *could* be transferred to Vermont, and decide whether the action *should* be transferred to Vermont. In doing so, the court will consider whether, if the motion to remand is denied, the case should be managed and tried in the District Court of Vermont or here. The court which would ultimately try the case would most appropriately determine the motion to remand. Looking to the statutory standards, judicially crafted explications of the standards, and the facts of this case, the court decides that the action should be transferred to Vermont, and the remand and class action decisions would be more appropriately made there.

▉ There are four reasons which persuade this court to transfer the present case. First is the case's status as a nation-wide class action. Second, at the time this suit was filed, there was already a nation-wide class action filed in Louisiana, *Birdsall*, which includes the named plaintiff and members of the present class. Third, besides the *Birdsall* case, there are three other cases all concerning the same facts which are pending in Vermont. Fourth, Plaintiff's motion to remand and other pending motions will not suffer any prejudice from the transfer.

11. Granted, Plaintiff did not actually choose this federal forum; he chose a state court in Alabama. He does, however, insist that this court should determine the motion to remand and he

### Nation-wide Class Action.

The court is motivated to transfer this case, in great part, because it is filed as a nationwide class action. Plaintiff's chosen forum, which is usually entitled to great deference, is entitled to less in those cases.[11] In addition, the case's status as a nation-wide class action makes other factors, such as the convenience of the witnesses and availability of proof, tilt greatly in favor of transfer.

▉ Deference to the Plaintiff's chosen forum is lessened in two situations relevant to this case. First, Plaintiff's choice of forum is entitled to less deference when the action is one brought on behalf of a class of persons similarly situated, as it is here. In *Koster v. Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947), the Supreme Court explained:

> [W]here there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened.

Second, when "the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration." *Garay v. BRK Electronics*, 755 F.Supp. 1010, 1011 (M.D.Fla.1991).

Here, the allegations are a nation-wide scheme perpetrated by a defendant in Vermont. The facts, as they are alleged, occurred in large part outside of Alabama. Plaintiff is specifically alleging that Defendant fraudulently sold so-called "vanishing premium" policies nationwide, "us[ing] uniform, typical sales presentations, promotional materials and illustrations ... for the purpose of inducing United States citizens to

opposes a forum outside the state of Alabama. Therefore, the court will speak in terms of the Plaintiff having chosen this forum.

purchase" the policies. *Gould complaint at 6.*

If there was a pattern of uniform fraud, it appears to this court that such a fraud would have been devised in Vermont. *Cf. Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 655 (11th Cir.1993), *cert. den.* 513 U.S. 814, 115 S.Ct. 69, 130 L.Ed.2d 24 (1994) (holding that in an employment case, "it was reasonable for the district court to assume that the overwhelming majority of witnesses" resided in the district where the defendant's plant and employment records were located). An affidavit of the Defendant's Senior Vice President spells this out, stating that the insurance policies at issue were "conceived, designed, and coordinated" at National Life's home office in Vermont. *M.K. Arthur Affid. at 1.* The affidavit goes on to state that decisions regarding "financial management" of the policies, such as "premium setting, dividend calculations, [and] portfolio composition" were made there. *Id.* Many of the operative facts, therefore, occurred outside of Alabama, entitling Plaintiff to less deference in the choice of this forum.

■ Deciding that the Plaintiff's chosen forum is entitled to less deference is not the end of the analysis, however. Even if the chosen forum is entitled to less deference, the court must still find that other factors "clearly outweigh[ ]" the chosen forum. Here, there is little difficulty reaching this decision. The convenience and availability of witnesses and the location of sources of evidence weigh in favor of transfer.

The convenience of the witnesses is often said to be the "most important factor" in deciding whether to transfer. *Hutchens,* 928 F.Supp. at 1091. Here, the key officers of National Life, who would be witnesses, are located in Vermont, about 35 miles from the Burlington federal courthouse. *M.K. Arthur (Senior V.P. of National Life) Affid. at 2.* In

addition, because the allegations involve policies from as early as 1982, many retired employees of National Life who reside in Vermont may be called to testify. *Id. at 2–3.* This fact is especially important given that the Middle District of Alabama would be unable to compel the attendance of these persons. *See* Fed.R.Civ.Pro. 45 (discussing subpoena power of courts).

The prospect of there being many witnesses from Alabama seems remote. National Life's Second Vice President for Corporate Systems Support & Development testified by affidavit about the weak connection of this case to Alabama. *Affid. of Barry J. Ibey.* During the period of 1985–95, National Life never maintained more than one insurance agency in Alabama, despite maintaining an average of 67 agencies nation-wide. *Id. at 1.* During the same period, an average of only 11 of National Life's 2,163 agents worked out of Alabama. *Id. at 2.* Consequently, less than 1.5% of National Life's 180,000 policies were issued in Alabama. *Id.* In addition, out of the 145,000 people who pay premiums to National Life, only about 1.28% reside in Alabama, as compared to three-times that many who pay premiums in Vermont. *Id.* To the extent that class members or field agents will be called as witnesses, they are more readily available in Vermont than Alabama.

Finally, National Life estimates that perhaps a million documents housed in Vermont may be relevant to the Plaintiff's allegations. *M.K. Arthur Affid. at 3.* It would be difficult either to transport or copy these documents for transport to Alabama. In addition, it would be disruptive to National Life's business to do so. *Id.*[12]

In sum, Plaintiff's choice of an Alabama forum is not entitled to the usual deference when the complaint is a nation-wide class action. And, in this case, the chosen forum is

---

12. Even if the Defendant had not pointed out the existence of these witnesses or documents, it would be reasonable for this court to assume that most of the evidence will be in Vermont, the location of the headquarter of National Life, and the location of most of its operations. *See Ross,*

980 F.2d at 655 (holding that in an employment case, "it was reasonable for the district court to assume that the overwhelming majority of witnesses" resided in the district where the defendant's plant and employment records were located).

clearly outweighed by other factors, including the convenience of the parties, witnesses, and the availability of subpoenas and evidence in Vermont. In addition, the class of plaintiffs is about three times as large in Vermont as it is in Alabama. A nation-wide class action with such a tenuous connection to Alabama, and such a strong connection to Vermont, properly belongs in Vermont.

### The Louisiana Action Preceded this One.

The decision to transfer is also motivated by the fact that this is not the first class action to be filed concerning these facts. About four months prior to the filing of this case, *Birdsall v. National Life* was filed in state court in Louisiana. It was subsequently removed to Louisiana federal court, and then transferred to the federal district court for Vermont. *Birdsall* contains the same allegations as this case.

The allegations in the Alabama action, *Gould*, are filed on behalf of, with certain exclusions, "[a]ll residents of the United States of America who were sold a life insurance policy [by National Life] that was represented to be paid up in a certain amount of time." *Gould Complaint at 3.* The complaint alleges, as a class action does, that the common questions, including questions regarding representations made to purchasers, and "inflated values," predominate over individual issues. *Id. at 4.* The false representations are alleged to have been made with regard to certain "vanishing premium" policies sold by National Life in the 1980s and 90s. *Id. at 6.* Under the policies, premiums were supposed to eventually be paid out of "accumulated dividends or other investment earnings." *Id.* Representations to this effect were made by "National Life and its agents us[ing] uniform, typical sales presentations, promotional materials and illustrations ... for the purpose of inducing United States citizens to purchase" the policies. *Id.* Things did not turn out as the purchasers thought, however; so recovery is sought under four counts: fraud, suppression, unjust enrichment, and breach of contract. *Id. at 7–10.*

*Birdsall* also alleged that there was a class of "[a]ll residents of the United States who have, or had at the time of the policy's termination, an ownership interest in one or more whole life or universal life insurance policies issued by National Life from the period between January 1, 1982, through December 31, 1995." *Birdsall Complaint at 8.* The Birdsalls thought that they purchased an insurance policy where the premiums would "vanish[ ] as represented and that no premium would be due." *Id. at 4.* Nevertheless, because of "fraudulent sales practices developed by National Life and employed by its sales force," the Birdsalls, like "hundreds of similarly situated individuals were fraudulently induced to purchase whole and/or universal life policies." *Id. at 5.* These fraudulent practices allegedly included "false and misleading sales presentations, policy illustrations, marketing materials and/or other information disseminated by Defendants." *Id.* The Birdsalls also alleged that common questions predominated across the class, and included within such common questions, the question whether "uniform sales presentations and/or policy illustrations presented to Plaintiffs and members of the Class contained false and misleading data." *Id. at 9–10.* The complaint contained five counts: unfair or deceptive acts, breach of fiduciary duty, negligent misrepresentation and omissions, fraud, and breach of contract. *Id. at 12–18.*

It is obvious that the Alabama action and the pre-existing *Birdsall* action, which has been transferred to Vermont and consolidated with another case there, concern the same allegations. National Life is being accused of a nation-wide practice of selling "vanishing premium" policies, in which the premium did not vanish as promised. Both actions allege that this practice was based on uniform national sales practices, and both actions seek relief under similar theories of wrongdoing. If the motion to remand is denied, a transfer in this case would promote uniformity of results, avoid duplicative court proceedings, and allow for the Vermont court to better consider whether consolidation of *Gould* with its other cases is appropriate. In addition, this transfer will save attorney's fees for both

the nation-wide class and the Defendant, since the Vermont court can undertake to eliminate duplicative proceedings and discovery, even if it does not consolidate the actions.

All in all, sending the *Gould* action to Vermont, which is already hearing the *Birdsall* action, would be in the best interest of efficiency, and in the best interest of justice. The transfer is both proper and appropriate. *See Hutchens,* 928 F.Supp. at 1090, quoting *Howell,* 650 F.2d at 616 ("A district court may properly transfer a case to 'the forum in which judicial resources could most efficiently be utilized and the place in which the trial would be most easy, expeditious and inexpensive' "); *Brown v. Connecticut Gen. Life Ins. Co.,* 934 F.2d 1193 (11th Cir.1991) (affirming transfer of case; stating that "It was appropriate that both these cases proceed in a single district to permit consolidation").

### The District of Vermont is Already Entertaining These Facts.

Deciding to transfer the *Gould* case to Vermont in the interest of efficiency and uniformity is also bolstered by the fact of several other pending cases in that District. Not only has the Louisiana action been transferred to that court. Subsequent to the filing of *Gould,* at least three other actions have been filed in, or transferred to, Vermont.

A little over a month after the Alabama action was filed, another class action was filed in Tennessee federal court. It was later transferred to Vermont, with the Judge finding that it contained the same allegations as three cases already pending in Vermont. The Tennessee case, *Moore v. National Life,* No. 3–97–0998, is a "class action seeking redress for a fraudulent and common course of conduct in connection with deceptive sales practices perpetrated by National Life." *Moore Complaint at 1.* Agents of National Life are alleged to have engaged in churning and sales of "vanishing premium" policies using fraudulent "standardized training and sales practices." *Id. at 3.* Like the other actions, allegations of nation-wide distribu-

tions of fraudulent materials are made. *Id. at 2* ("Through National's sales force who receive sales materials, presentations and illustrations from National"). Alleged legal violations include "fraud, fraudulent inducement, negligent misrepresentation, negligence, statutory consumer fraud, unjust enrichment breach of fiduciary duty," and breach of contract. *Id. at 2.*

*Akerley v. National Life* was filed in Vermont district court on November 5, 1997, and also concerns the same facts. It seeks relief because of a "fraudulent scheme perpetrated by National Life, directly and through its nationwide force of sales agents and representatives." *Akerley Complaint at 1.* It is brought on behalf of a "class consisting of all persons or entities who have (or had at the time of the policy's termination) an ownership interest in one or more life insurance policies purchased from National Life (or its predecessors or affiliates) from and after January 1, 1982 through the present." *Id. at 4.* False representations at issue include "projected interest rates, cash values and expected cash accumulation for the Policy." *Id. at 10.* Because these projections were not correct, Plaintiff was "forced to contribute cash beyond the number and/or amounts to which she had agreed." *Id.* Allegations are also made that the alleged fraud involved certain "uniform false and misleading sales materials ... which were used by its agents across the country." *Id. at 7.* Counts are brought for breach of contract, fraudulent misrepresentation, negligent misrepresentation, breach of fiduciary duty, reckless/wanton/negligent supervision, and unjust enrichment. *Id. at 11–17.*

A fifth class action was brought in Vermont on November 24 again alleging the same facts. *Venne v. National Life* alleges that the plaintiff, like a class that he represents, was victimized by the defendant's " 'vanishing premium' tactic." *Venne Complaint at 3.* Defendant and its agents are said to have "engaged in a pervasive scheme and course of conduct using a uniform and standardized sales presentation." *Id. at 4.* The class in *Venne* includes all purchasers after

January 1, 1981, *id. at 6,* who had been deceived in this "nationwide sales and marketing program," *id. at 13.* Counts are brought for fraud, fraudulent inducement, breach of fiduciary duty, breach of contract, breach of good faith, negligence, negligent misrepresentation, unjust enrichment, other injunctive relief, reformation, and consumer fraud. *Id. at 20–31.*

All three of these further actions are substantially similar, indeed almost identical, to the *Gould* action. As noted in the facts, the District Court for the District of Vermont has already consolidated one of the cases with *Birdsall,* and may even have set up a procedure to consolidate any subsequently filed cases. The appropriateness of consolidation of *Gould* along with these other four actions, may be better considered in Vermont.

### Vermont Can Better Deal with the Remand.

The District Court of Vermont is also in a better position to deal with the remand in this case. The arguments at issue are largely over the amount in controversy, and concern facts regarding the value of the policies and the amount needed to pay them off. The Vermont district court is in a better position to answer these questions. In any event, however, Plaintiff will not be prejudiced by Vermont's consideration of these questions since remand law is a law of general federal application.

Plaintiff has pointed to a few Middle District cases where the court chose to remand the case before hearing a motion to transfer. In *National Union Fire Ins. Co. v. Liberty Mut. Ins.,* 878 F.Supp. 199 (M.D.Ala.1995), Judge De Ment chose to remand a case, finding that it could not hear other motions— namely a motion to dismiss or stay, or in the alternative transfer, *id.* at 199—because the court "must possess jurisdiction before it

may rule on Defendant's requested motions," *id.* at 203. Likewise, in two orders issued by Magistrates Carroll and Coody of the Middle District, they decided to stay a motion to transfer pending decision on a motion to remand. *See McGahan v. The Northwestern Mutual Life Ins. Co.,* No. 97–C–1367–N (M.D.Ala., Nov. 3, 1997); *Rhoden v. Berkshire Life Ins. Co.,* No. 97–S–1405–N (M.D.Ala., Oct. 20, 1997).[13]

■ These decisions do not stand for the proposition that Plaintiffs assign them, however—they do not require that a court decide a motion to remand before a ruling on a motion to transfer. Indeed, Judge De Ment was dealing with not just a motion to transfer, but also a motion "on the merits." *Id.* The other orders are only orders without an explanatory opinion. Judge Carroll does say that he is of the opinion that "the motion to remand must be decided first because it implicates this court's subject matter jurisdiction." *McGahan* at 1. Neither his order, nor the order of Judge Coody, state a general rule, however. They only demonstrate instances when a court has thought it more appropriate to decide a remand first; they do not state a general rule that remands must be decided first.

Indeed, there is no federal law or statute, or judicial decision, that requires this court to decide a motion to remand before it decides a motion to transfer. Just as Plaintiff is able to point to cases where a remand is decided first, Defendant can point to cases where the transfer was decided first. In the Middle District on several occasions, judges have decided to transfer motions to remand along with the case to a Multidistrict litigation panel. *See, e.g., Adams v. The Prudential Ins. Co.,* No. 97–S–814–N (M.D.Ala., July 30, 1997) (Coody, J.) (noting similar action of Judge Albritton in *Maddox v. The Prudential,* 97–A–617–S).[14] Other districts have also decided to transfer a case before decid-

---

**13.** These orders, one-page and two-pages long respectively, are attached as exh. A and B to the *Plaintiff's Submission of Notice of Decision,* Nov. 19, 1997.

**14.** Attached as exh. D to *Def. Nat'l Life Ins. Co.'s Memo. in Opp. to Plaintiff's Motion to Stay Def.'s Motion to Transfer Pending the Court's Decision on Plaintiff's Motion to Remand,* Nov. 12, 1997.

ing a motion to remand in non-MDL situations. *See Allison v. Allstate Ins. Co.*, 1997 WL 31175, Civ. A. No. 96–2757 (W.D.La., Jan. 22, 1997) (noting that motion to remand had been carried with transferred case); *Schouman v. Schouman*, 1996 WL 721195, Civ. A. No. 96–11588–REK (D.Mass.) (transferring case to district where it may be consolidated with other proceeding); *Barnes v. Resolution Trust Corp.*, 1992 WL 19113, Civ. A. No. 91–2900–LFO (D.D.C.1992) (transferring case, noting that "plaintiff can challenge removal more easily and with far less expense in the transferee district"); *Lewis v. Resolution Trust Corp.*, 1992 WL 19248, Civ. A. No. 91–2870–LFO (D.D.C.1992) (same).

In addition, the Plaintiff should remember that decisions whether to transfer are decided on the facts of each case. Likewise, the decision whether to decide a remand or a transfer first should be made on the facts of the particular case. The case cited by Plaintiff, *National Union*, was not a nation-wide class action, but dealt rather, with an alleged product failure in Alabama that killed one person and injured two others. *Id.* at 200. The court may have felt that the facts there made the decision to remand more appropriate. Here, the court is faced with a nation-wide class action, specifically one which duplicates one previous case, and three later filed cases, which are all pending in another district court. This fact—that the District of Vermont is already dealing with these issues—coupled with the facts that most of the witnesses and proof are in Vermont, lead the court to the conclusion that the transfer would be better decided first in this instance.

This court's decision to transfer does not affect the Plaintiff's motion for remand, or the Defendant's motion regarding class certification. Those motions will be transferred along with the case. Vermont's district court is capable of dealing with the legal issues surrounding those motions. Indeed, remand law is federal law, and Rule 23 is the same in Vermont as it is in Alabama. In addition, this case is filed as a nation-wide class action. To the extent that state law will be relevant, the District of Vermont is as capable of

determining the law of all 50 states as is this court. Determining the law is not the only decision to be made at the stage of remand and class certification, however. A court may also be required to determine certain facts, such as the number of policies sold, the worth of each policy, or other factors which could enter into a Rule 23 analysis or an analysis of the amount in controversy. The District of Vermont will be better able to determine these issues given its proximity to the witnesses and sources of proof. In addition, the District of Vermont will be able to deal with these issues in a consistent, and perhaps consolidated, manner, given its control over the other pending class actions.

Contrary to the insistence of the Plaintiff, deciding the issue of remand first would not necessarily 'save a step' or otherwise save expenses. If this court decided not to remand the case, and later transferred it to Vermont, the court there might conceivably be faced with the question of jurisdiction again. Likewise, if this court decided the issue of remand in favor of the plaintiff that would not necessarily save a step in the litigation. Even if the case were sent back to Alabama state court, that is no guarantee that it might not eventually end up in Vermont district court. While the court is not aware of any mechanism by which the Alabama state court could transfer a case to Vermont federal district court, an Alabama state court could dismiss the case for forum non conveniens, *see Ex Parte First Nat'l Bank of Jasper,* —— So.2d ——, 1997 WL 773364 at * 13, No. 1961542 (Ala., Dec. 16, 1997) (Maddox, J., concurring in the result), or dismiss the case because there was an earlier filed nation-wide class action in Louisiana, *see id.* at *1 (majority), discussing *Ex Parte State Mut. Ins. Co.,* —— So.2d ——, 1997 WL 772923, Nos. 1960410, 1960455, 1960589 (Ala., Dec.17, 1997).

## IV. *CONCLUSION*

This court is not stating a rule that a Plaintiff's choice of forum should be lightly disregarded. Nor is the court establishing a

rule that all disputes against insurance companies must be settled on the companies' home turf. Rather, the court is only saying that a transfer is appropriate under the facts of this particular case—where there is a nation-wide class action, concerning facts which occurred in Vermont, where the sources of proof are overwhelmingly in Vermont, and where there are already a number of identical cases in Vermont. Future cases should likewise be decided on their particular facts.

The court is aware that a transfer is not appropriate if it only serves to shift expense from one party to another. *See Robinson*, 74 F.3d at 260. Here, however, the expenses can be reduced for both the nation-wide class of plaintiffs and the Defendant (not to mention the court), if the case is transferred to Vermont. The District Court of Vermont, and the juries of Vermont, are as capable as those of Alabama to deal with these facts and reach a just result, and indeed they are in a better position given the sources of proof.[15] Uniformity and efficiency will prevail because this case is TRANSFERRED.

A separate order will be entered in accordance with this memorandum opinion.

### ORDER

In accordance with the opinion issued on this day:

1. Defendant's Motion to Transfer this case to the United States District Court for the District of Vermont is GRANTED. The clerk of the court is directed to take steps necessary to effect this transfer.

2. Defendant's Motion to Stay the Decision to Remand Pending the Transfer is GRANTED. Remand may be considered by the transferee jurisdiction.

3. Plaintiff's Motion to Stay the Decision to Transfer Pending Remand is DENIED.

4. It is noted by the court that Plaintiff's Motion in Opposition to Defendant's Mo-

tion for Extension of Time was made MOOT by this court's order of November 4, 1997.

5. All other pending motions, including the motion to remand and motions regarding class certification, are TRANSFERRED along with the case.

---

**15.** Plaintiff has not strongly argued that Vermont would be an inconvenient or inadequate forum. Indeed, it would be difficult to do so given that he purports to represent a nation-wide class of people (including those from Vermont).