Gloria MITCHELL, et al., Plaintiffs,

v.

GEICO, et al., Defendants.

No. CIV.A. 00–D–381–N.

United States District Court,
M.D. Alabama,
Northern Division.

June 23, 2000.

---

1323

Ernest C. Hornsby, Jr., Morris, Haynes & Hornsby, Alexander City, AL, Joe R. Whatley, Jr., Whatley Drake, L.L.C., Birmingham, AL, for plaintiffs.

Richard A. Ball, Jr., Ball, Ball, Matthews & Novak, P.A., Montgomery, AL, Clyde C. Owen, Jr., Ball, Ball, Matthews & Novak, P.A., Montgomery, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Plaintiffs' Motion To Remand (Doc. No. 5), filed April 24, 2000. Defendants oppose the Motion. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Plaintiffs' Motion To Remand is due to be granted.[1]

## I. STANDARD OF REVIEW

A defendant, as the party removing an action to federal court, has the burden to establish federal jurisdiction. *See Diaz v. Sheppard,* 85 F.3d 1502, 1505 (11th Cir. 1996). Removal of a case from state to federal court is proper if the case could have been brought originally in federal court. *See* 28 U.S.C. § 1441(a). A federal district court may assert jurisdiction in a case involving citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a). Therefore,

1. When citing to certain pleadings in the record, the court will refer to the docket numbers assigned to those pleadings ("Doc.No.").

where the parties are diverse and the amount in controversy is sufficient, a defendant has the statutory right to remove an action from state court to federal court. *See id.*

 Regarding § 1332(a)'s amount-in-controversy requirement, where a plaintiff specifically claims less than the requisite jurisdictional amount, a defendant must prove to a "legal certainty" that plaintiff's claims would not yield a recovery less than the jurisdictional amount. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994); *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938) (holding that "unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith [and] it must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal"). "This heavy burden reflects the notion that plaintiff has the right to choose his own forum, for 'plaintiff is the master of his or her own claim; if plaintiff chooses to ask for less than the jurisdictional amount, only the sum actually demanded is in controversy.'" *Seroyer v. Pfizer, Inc.*, 991 F.Supp. 1308, 1312 (M.D.Ala.1997) (citing Charles A. Wright & Arthur R. Miller, 14A Federal Practice & Procedure § 3702). "If [plaintiff] does not desire to try his [or her] case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove." *St. Paul Mercury*, 303 U.S. at 294, 58 S.Ct. 586.

## II. BACKGROUND

 The facts relevant to Plaintiffs' Motion To Remand are as follows.[2] On or about February 29, 2000, Plaintiffs Gloria Mitchell, Hattie M. Butler, and James E. Butler (referred to collectively as "Plaintiffs") filed a class action Complaint in the Circuit Court of Coosa County, Alabama. (Compl. at 1; Doc. No. 1.) The named Defendants are GEICO, GEICO Casualty Company, GEICO General Insurance Co., Government Employees Insurance Company, and GEICO Indemnity Company (referred to collectively as "GEICO" or "Defendants"). (Compl. at 1.)

In this action, Plaintiffs challenge Defendants' practice of using "after-market" parts to repair insureds' automobiles and estimating the cost of repair based on the cost of these "aftermarket" parts. (*Id.* ¶¶ 9–29; Doc. No. 6 at 1–2.) Plaintiffs assert several state-law claims, including breach of contract (Count 1), breach of good faith and fair dealing (Count 2), and unjust enrichment/constructive trust (Count 3).

Plaintiffs bring this lawsuit on behalf of themselves and on behalf of a class of other persons with similar claims. The class for which Plaintiffs seek certification is as follows:

> All policyholders of GEICO or any of its subsidiaries who, during the twenty year period preceding the filing of this complaint, were issued an automobile insurance policy which provided that if the insured's vehicle is damaged then it would be repaired with material of like kind and quality and/or if the insured is involved in an automobile accident the recovery would be the amount necessary to repair the insured's damaged property to to of [sic] property of like kind and who sustained a comprehensive or collision loss and who, directly or indirectly, received payment as determined by a repair estimate prepared or approved by GEICO wherein imitation body parts or after market parts were used in the repairs.

(*Id.* at 6.) Plaintiffs estimate that the class could be as large as several thousand people. (*Id.* at 7.)

---

**2.** The facts are construed in the light most favorable to Plaintiffs as they must be for the purposes of a motion to remand. *See Crowe* *v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997).

In the Ad Damnum clause of their Complaint, Plaintiffs request an injunction, declaratory relief, compensatory damages and all "such other and further relief as may be just and proper." (*Id.* at 13–14.) Therein, Plaintiffs also include the following disclaimer: Plaintiffs "limit[ ] the recovery of Plaintiffs and each individual Class member to a sum not to exceed $75,000.00."[3] (*Id.* at 13.)

Although Plaintiffs' Ad Damnum clause does not contain a request for punitive damages, other areas of Plaintiffs' Complaint mention punitive damages. For instance, in setting forth their cause of action for breach of good faith and fair dealing, Plaintiffs aver that Defendants' conduct "warrant[s] the imposition of punitive damages." (*Id.* ¶ 47; *see also id.* ¶ 31.) Despite the aforementioned references to punitive damages in the Complaint, counsel for Plaintiffs filed an Affidavit on June 12, 2000, wherein counsel states as follows: "Neither the class counsel, the plaintiff[s] nor the individual class members are requesting punitive damages and they will not accept punitive damages even if a state court or jury should try to award such damages to them." (Aff. at 1.)

## III. DISCUSSION

On March 30, 2000, Defendants removed this putative class action based on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Defendants contend that there is complete diversity between the Parties and that the jurisdictional amount in controversy has been satisfied. In moving to remand this action to state court, Plaintiffs have not contested Defendants' assertion that § 1332(a)'s complete diversity requirement is satisfied. Rather, Plaintiffs argue only that the amount in controversy does not exceed the jurisdictional amount of $75,000. Therefore, the sole issue before the court is whether the amount in controversy is satisfied, despite Plaintiffs' attempts to specifically limit their recovery to a sum less than $75,000.

In opposing Plaintiffs' Motion To Remand, Defendants raise two arguments in support of their contention that the amount in controversy surpasses $75,000. First, Defendants contend that the aggregated value of Plaintiffs' request for prospective injunctive relief exceeds $75,000. (Doc. No. 11 at 4–11.) Second, Defendants argue that, contrary to Plaintiffs' assertions, Plaintiffs' Complaint contains a request for punitive damages. Absent a stipulation from Plaintiffs that they waive recovery of punitive damages, Defendants aver that the court must consider punitive damages in determining the amount in controversy and that in the aggregate said damages exceed the jurisdictional requirement.[4] (Doc. No. 11 at 3, 9–14.) The court addresses each argument in turn.

### A. Prospective Injunctive Relief

On behalf of a putative class, Plaintiffs seek prospective injunctive relief enjoining Defendants "from using imitation parts, from eliminating procedures, materials and parts necessary to restore damaged vehicles using property of like kind and quality . . . ." (Compl. at 13; *see also id.* ¶ 36.) Defendants assert that the putative class has a "common and undivided interest" in the requested prospective injunction. (Doc. No. 11 at 4, citing *Snyder v. Harris,* 394 U.S. 332, 335, 89 S.Ct. 1053, 22

---

3. The court notes that Plaintiffs have "attempted to 'de-federalize' the action" by "disclaim[ing] an amount of damages which may make this case appropriate for federal diversity jurisdiction." *Gould v. National Life Ins. Co.,* 990 F.Supp. 1354, 1356 (M.D.Ala.1998) (Albritton, J.); *see also Crawford v. American Bankers Ins. Co. of Fla.,* 987 F.Supp. 1408, 1409 & 1410 n. 3 (M.D.Ala.1997) (Albritton, J.).

4. Subsequent to Defendants filing the above pleading (i.e., Doc. No. 11), counsel for Plaintiffs submitted an Affidavit expressly waiving the recovery of punitive damages on behalf of Plaintiffs and the putative class. *See supra,* Section II. The representations made in said Affidavit appear to render Defendants' argument moot. However, in an abundance of caution, the court will address the effect of said Affidavit on the amount in controversy in Section II.B, *infra.*

L.Ed.2d 319 (1969).) Specifically, Defendants contend that the requested injunctive relief, which would bar Defendants from engaging in certain forms of business practice in the future, has no divisible value to each member of the prospective class. (*Id.* at 4–6.) Therefore, Defendants argue that the prospective injunctive relief must be valued as a whole and that the aggregated value exceeds the jurisdictional amount. (*Id.* at 7–9.)

However, Plaintiffs argue that their claims "arise from independent and separate, although exceedingly similar, wrongs as a result of separate and distinct insurance agreements." (Doc. No. 6 at 11.) Thus, Plaintiffs assert that "the value of the future injunctive relief should not be aggregated." (*Id.*) Alternatively, Plaintiffs argue that, "even if the value of the future injunctive relief should be aggregated," that value "*still* would not be sufficient to met [sic] the jurisdictional threshold in this matter." (*Id.* (emphasis in original).) In support of the latter argument, Plaintiffs rely in part on *Crawford v. American Bankers Ins. Co. of Florida*, 987 F.Supp. 1408 (M.D.Ala.1997) (Albritton, J.). (*Id.* at 11–12.) For the reasons that follow, the court finds that it need not determine whether the value of the prospective injunctive relief should be aggregated. Assuming, without deciding, that aggregation is appropriate, the court concludes that Defendants have not met their burden of establishing to a legal certainty that the value of the prospective injunctive relief to the plaintiff class as a whole meets the jurisdictional minimum.[5]

 Where injunctive relief is sought, "the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *Cohen*, 204 F.3d at 1077 (citing *Ericsson*, 120 F.3d at 218–20). "In other words, the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted." *Id.* Where multiple plaintiffs claim less than the jurisdictional amount, their separate and distinct claims cannot be aggregated in order to satisfy the jurisdictional requirement of § 1332(a). *See Hall v. ITT Financial Services*, 891 F.Supp. 580, 582 (M.D.Ala.1994). On the other hand, where a class of plaintiffs request injunctive relief to "enforce one common right held collectively by all plaintiffs," the court must value the injunction as an aggregate whole. *Shelly v. Southern Bell Tel. & Tel. Co.*, 873 F.Supp. 613, 616 (M.D.Ala.1995) (citing *Zahn v. International Paper Co.*, 414 U.S. 291, 294–95, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973)); *see also Crawford*, 987 F.Supp. at 1413.

Considering the value of the injunction as a whole, however, does not automatically mean that the amount in controversy will be satisfied. Sometimes the full value will be minimal or " 'too speculative and immeasurable' to establish the requisite amount in controversy ...." *Cohen*, 204 F.3d at 1077 (quoting *Ericsson*, 120 F.3d at 221–222). For example, in *Crawford*, the court determined that the value of an injunction to the plaintiff class was negligible. There, the plaintiff commenced a state-law class action based on allegations that the defendant "wrongfully force-placed insurance on their accounts." *Crawford*, 987 F.Supp. at 1409. The complaint limited damages to "less than" $75,000 and disclaimed any request for punitive damages. *Id.* Despite the damages cap by the plaintiff, the defendant removed the case to federal court on the ground that the aggregate of the prospective injunctive relief exceeded $75,000. *Id.* The plaintiff moved to remand the case to state court. *Id.*

---

5. *See Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir.2000) ("[W]e need not address whether the monetary value of the requested injunctive relief should be considered in the aggregate, or instead attributed pro rata among the class members, because we conclude that the monetary value of the injunctive relief to the class plaintiffs in this case is 'too speculative and immeasurable' to establish the requisite amount in controversy in either event.") (quoting *Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Elecs., Inc.*, 120 F.3d 216, 221–222 (11th Cir.1997)).

In ruling on the plaintiff's motion to remand, the *Crawford* court was faced with determining the aggregate value of the prospective injunction. *Id.* at 1414. The putative class sought to enjoin the defendant from force-placing credit insurance on their accounts in the future. *Id.* at 1409, 1414. In arguing that the amount in controversy was satisfied, the removing defendant presented uncontested evidence that its annual income derived from force-placed insurance exceeded $450,000 in Alabama. *Id.* Additionally, the defendant argued "that the future injunction sought would stop it from doing force-placed business insurance in [Alabama]." *Id.* at 1414.

In rejecting the defendant's attempt to value the injunction from a defendant-viewpoint, rather than a plaintiff-viewpoint, the court explained as follows:

> What does it mean to the putative class of plaintiffs here that this particular insurance company would no longer be able to write force-placed insurance in Alabama? The court is inclined to answer: nothing, at least monetarily. Plaintiffs will not gain financially because the Defendant loses financially. Plaintiff[s'] financial recovery will come, rather, from their tort and equity claims, not from the prospective injunctive relief.

*Id.* at 1415. In finding that the monetary value of the injunction was "nothing," the *Crawford* court emphasized that it was the defendant's "job" to show the court that the value of prospective injunctive relief clearly exceeded the jurisdictional limit. *Id.* at 1415. Because the defendant failed to meet its burden, the court granted the plaintiff's motion to remand. *Id.* at 1415–1416.

■ Applying the principles espoused in the foregoing cases, the court finds that, from Plaintiffs' perspective, the value of the requested injunctive relief is minimal and speculative. First, as in *Crawford*, the court finds that the monetary value of the prospective injunctive relief to the class as a whole is minimal. *See id.* at 1415. Namely, the court finds that the individual Plaintiffs are concerned primarily about the amount of compensatory damages and restitution that each class member will receive if the class action is successful. According to Plaintiffs, "the things that will have value from [ ][P]laintiffs' perspective, and the tangible benefits which they, and each class member, will receive if they are successful in their claims, are the amount each ... will receive *individually* in compensation for the inferior parts that were installed on their vehicle or for which they received payment." (Doc. No. 6 at 9 (emphasis in original).) Based on the latter statement, it is clear that the monetary gain Plaintiffs seek to obtain is derived from damages each has suffered in the past, i.e., his or her compensatory damages.[6] In other words, Plaintiffs are primarily concerned with retrospective monetary relief for each class member, not prospective injunctive relief for the class as a whole.

Second, as in *Cohen*, the court finds that the monetary value of the prospective injunctive relief to the class as a whole is speculative. *See* 204 F.3d at 1077. In finding above that the value is minimal, the court acknowledges that some class members may monetarily benefit in the future from a prospective injunction. However, the monetary benefit will only materialize provided that a Plaintiff continues to maintain insurance through GEICO and provided that a Plaintiff's automobile is damaged and requires repair under the insurance policy. These contingencies, the court finds, raise only hypothetical situations and are too conjectural for purposes of ascertaining a monetary value of the injunction as a whole.[7] Where the monetary

---

**6.** The court notes that it is undisputed that "the compensatory damage claims of individual class members may not be aggregated to satisfy the amount [in controversy]." *Davis v.*

*Carl Cannon Chevrolet–Olds, Inc.,* 182 F.3d 792, 794 (11th Cir.1999).

**7.** Moreover, the court notes that the monetary benefit, if any, may be offset by increased

value of the injunctive relief is " 'too speculative and immeasurable,' " a defendant cannot satisfy its burden of demonstrating to a legal certainty that the amount in controversy is satisfied. *Cohen*, 204 F.3d at 1077 (quoting *Ericsson*, 120 F.3d at 218–20).

Moreover, the court finds that the speculative nature of the aggregate value of the injunctive relief is magnified in this case because Plaintiffs and their proposed class are comprised of "former consumers." *Crawford*, 987 F.Supp. at 1415. Plaintiffs seek to certify a class of Plaintiffs who, in the past twenty years, have "sustained a comprehensive or collision loss" and have "received payment as determined by a repair estimate prepared or approved by GEICO wherein imitation body parts or after market parts were used in the repairs." (Compl. at 6.) Should a court grant Plaintiffs' request for a prospective injunction, it may be that in the future this particular class of Plaintiffs collectively reaps benefits in excess of $75,-000. However, based on the record, there is no way at this point for the court to determine whether the class of Plaintiffs has a financial interest in Defendants' future business practices.

Defendants raise two grounds to support their contention that a specific monetary value can be attached to the prospective injunctive relief. The court finds both arguments unavailing. First, Defendants have submitted evidence that in 1999 alone GEICO specified aftermarket parts on more than 90,000 occasions and that the "price differential" between the aftermarket parts and the OEMs "was in the millions of dollars." (Doc. No. 11 at 8.) Therefore, according to Defendants, "even considering only one year in which the injunction would be in effect for only one of the defendants, the requested injunctive relief would easily meet the $75,000 amount-in-controversy." (Doc. No. 11 at 8; Doc. No. 1, ¶ 5.) The court disagrees.

The court finds, as did the *Crawford* court, that Defendants' "valuation is flawed." 987 F.Supp. at 1415. Defendants' analysis focuses on the financial costs to Defendants in order to comply with the requested injunction, "an approach which is not allowed by the Eleventh Circuit after *Ericsson.*" *Id.* (citing *Ericsson*, 120 F.3d at 216). The court must focus on the value of the requested prospective injunctive relief from Plaintiffs' viewpoint, which, as found above, is minimal and speculative. *See Cohen*, 204 F.3d at 1079 n. 8 ("The potential cost of compliance to the defendant ... is irrelevant in determining the value of the benefit that would be obtained by the plaintiff from an injunction.").

Second, Defendants rely heavily on *Edge v. Blockbuster, Inc.*, in support of their argument that the aggregate value of Plaintiffs' prospective injunctive relief exceeds $75,000. 10 F.Supp.2d 1248 (N.D.Ala.1997). In *Edge*, a class of plaintiffs sought compensation for excessive charges assessed on overdue rental videos and also requested an injunction preventing defendants from charging excessive late fees in the future. *Id.* at 1249, 1253. The court found that the proposed injunctive relief was "a common and undivided interest of the plaintiff class." *Id.* In aggregating the value of the injunctive relief, the court considered the cost to the defendants of complying with the injunction. *Id.* at 1251–53. After carefully considering *Edge* and Defendants' arguments based on that decision, the court respectfully disagrees with the reasoning in *Edge*. Instead, the court agrees with the rationale of *Crawford, supra*, that

insurance premiums. (*See* Doc. No. 11 at 2, wherein Defendants state that "promoting the appropriate use of more economical quality aftermarket parts instead of costlier OEMs [Original Equipment Manufacturers] is a sound practice that has been applauded by consumer advocates because it controls re-

pair costs, meaning lower insurance premiums for policy holders."). However, the court notes that, by assuming a monetary benefit to Plaintiffs, the court has not taken into account possible increases in premiums, should Plaintiffs prevail and obtain prospective injunctive relief.

*Edge* does not ... shed any light on the issue of valuing prospective injunctive relief from the point of view of the plaintiff. Indeed, *Edge,* even though it was written after *Ericsson,* does not discuss that case and appears to value prospective injunctions in the wrong manner, i.e., from the point of view of the defendant.

*Crawford,* 987 F.Supp. at 1415 n. 8. In short, the court finds that *Edge* does not warrant the denial of Plaintiffs' Motion To Remand.

In sum, the court finds that, from the viewpoint of Plaintiffs, a prospective injunction has minimal value, if any, to the class as whole. Further, the court finds that the aggregate value of the injunction, at best, is speculative. Consequently, the court finds that Defendants have not met their burden of showing to a legal certainty that the value of the prospective injunctive relief exceeds $75,000.

### B. Punitive·Damages

■ Defendants assert that Plaintiffs' Complaint contains a request for punitive damages and that "the punitive damages in this putative class action suit must be considered in the aggregate when determining the amount in controversy." (Doc. No. 1 at 3; Doc. No. 11 at 3.) Plaintiffs, however, state that they seek *only* compensatory damages, "not to exceed $75,-000" per each class member, and do not seek punitive damages. (Compl. at 13; *see also* Compl. at 6, wherein Plaintiffs state that "to be excluded from the Class are all persons who have claims in excess of $75,-000".) Further, Plaintiffs point out that the Ad Damnum clause of their Complaint does not contain a request for punitive damages. (Doc. No. 6 at 2.) Because the Complaint limits the damages demand for each Plaintiff and each class member to an amount less than the jurisdictional prerequisite, Plaintiffs argue that this case is due to be remanded. (*Id.* at 3.)

In reply, Defendants do not question Plaintiffs' $75,000 limitation as it pertains to Plaintiffs' request for compensatory damages. However, as to punitive damages, Defendants assert that the court should examine the allegations in Plaintiffs' Complaint as a whole, not just Plaintiffs' specific requests in the Ad Damnum clause. Namely, Defendants point to Plaintiffs' explicit references to punitive damages in other parts of the Complaint, as well as to Plaintiffs' request for "such other relief and further relief as may be just an proper." (Doc. No. 11 at 10, citing Compl. at 13–14.) According to Defendants, "[b]ecause the Complaint expressly alleges punitive damages, and because [P]laintiffs refused to stipulate they would not seek or accept such relief, punitive damages must be considered in determining the amount in controversy." (*Id.* at 9.) For the reasons that follow, the court finds that Plaintiffs have waived any recovery for punitive damages, and, thus, punitive damages cannot be considered in determining the amount in controversy.

Subsequent to the filing of Defendants' briefs opposing Plaintiffs' Motion To Remand, Plaintiffs submitted an Affidavit expressly waiving the recovery of punitive damages in this action. (Aff. at 1.) To the extent that Plaintiffs' Complaint is ambiguous, the court finds that said Affidavit unequivocally clarifies that Plaintiffs are not requesting punitive damages. Based on the Affidavit filed by Plaintiffs and the Complaint's cap on damages, the court makes the following three findings: (1) Plaintiffs do not seek nor will they accept a punitive damages award in this case; (2) Plaintiffs intended to limit their recovery and each class member's recovery to less than the jurisdictional minimum when Plaintiffs filed their Complaint; and (3) neither the named Plaintiffs nor any proposed class members will ask for or accept damages more than $75,000. *See, e.g., Cowan v. Combined Ins. Co. of America,* 67 F.Supp.2d 1312, 1316–17 (M.D.Ala.1999) (finding that a plaintiff may limit the amount of recovery for compensatory damages and waive recovery for punitive damages on behalf of a putative class); *see also*

*Hooks v. Assoc. Fin. Servs. Co.*, 966 F.Supp. 1098, 1101 (M.D.Ala.1997).

Based on the foregoing, the court finds that Defendants have not and cannot demonstrate to a "legal certainty" that the amount of damages sought in this action exceeds the jurisdictional amount of $75,-000, exclusive of interest and costs. *Burns*, 31 F.3d at 1097; *see also Pickett v. Michigan Mutual Ins. Co.*, 928 F.Supp. 1092, 1092–93 (M.D.Ala.1996). In so finding, the court emphasizes that, while it does not call into question the integrity of Plaintiffs' damages demand, should Plaintiffs disregard said demand and pursue or accept damages in excess of $75,000, then upon application to the court by opposing counsel, an investigation into the representations of Plaintiffs' counsel to this court will be swift in coming. Further, the court forewarns Plaintiffs that sanctions, should they be deemed appropriate, will be painful upon arrival.

## IV. ORDER

Accordingly, it is CONSIDERED and ORDERED that Plaintiffs' Motion To Remand be and the same is hereby GRANTED, and that this action be and the same is hereby REMANDED to the Circuit Court of Coosa County, Alabama, pursuant to 28 U.S.C. § 1447(c).

The Clerk of Court is DIRECTED to take all steps necessary to effectuate said remand.