Lev B. KLEMPNER and Carlos Ramos, individually and on behalf of all others similarly situated, Plaintiffs,

v.

The NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, a mutual insurance company, Defendant.

No. 01–3539–CIV.

United States District Court, S.D. Florida.

Dec. 17, 2001.

Stuart Harold Singer, Carlos Mario Sires, Carl E. Goldfarb, Boies Schiller & Flexner, LLP, Hollywood, FL, for plaintiffs.

Martin Leonard Steinberg, Donald Bruce Hoffman, Emilia Quesada, Hunton & Williams, Barclays Financial Center, Miami, FL, for Northwestern Mutual Life Insurance Company.

### ORDER GRANTING MOTION TO REMAND

MIDDLEBROOKS, District Judge.

THIS CAUSE comes before the Court upon the plaintiffs' Motion to Remand, filed September 14, 2001 (DE# 13). On October 1, 2001, defendant Northwestern Mutual Life Insurance Company ("Northwestern") filed its response, to which the plaintiffs replied on October 12, 2001. Therefore, the motion is ripe for disposition. The Court has reviewed the record and is advised in the premises.

### I. *Introduction*

On July 9, 2001, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami–Dade County, Florida, the plaintiffs individually and on behalf of all others similarly situated filed a complaint against Northwestern. Northwestern was served with the complaint on July 16, 2001, and removed the case to this Court on August 15, 2001, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

The named plaintiffs, Lev B. Klempner and Carlos Ramos, are physicians residing in Florida. Plaintiffs own disability insurance policies issued by Northwestern (the "Policies"), which is a mutual insurance company incorporated under the laws of the state of Wisconsin and licensed to do business in the state of Florida (among others). In the complaint, plaintiffs assert a claim against Northwestern for an allegedly unlawful failure to pay annual dividends on the Policies out of Northwestern's divisible surplus. Plaintiffs claim that the Policies specifically state that they are "eligible for dividends" and that Northwestern "prominently markets the fact that policies of the type issued to plaintiffs are eligible to receive dividends from Northwestern Mutual's divisible surplus." Compl. ¶ 7. Plaintiffs claim that "[d]espite contractual provisions of plaintiffs' disability policies and Northwestern Mutual's record divisible surpluses, Northwestern Mutual has failed to issue or pay to plaintiffs and others similarly situated a share of the company's dividend surplus since 1997," *id.* ¶ 14, and have set forth two counts against Northwestern: breach

of contract and a claim for declaratory judgment.

Those are the allegations in brief. However, the matter at issue here focuses on the predicate issue of the power of this Court to hear this case. Because the Court finds that it lacks subject matter jurisdiction to hear this case, it shall remand the case to the state court from which it was removed.

## II. *Federal Jurisdiction*

■ In its Notice of Removal, Northwestern claims that removal is proper pursuant to 28 U.S.C. § 1441, which states: "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court *of which the district courts of the United States have original jurisdiction,* may be removed by the defendant ..., to the district court of the United States for the district and division embracing the place where such action is pending." (emphasis added).[1] The italicized portion of that Section is the crux of the matter here, for the parties vigorously dispute, *inter alia,* the existence or otherwise of this Court's original jurisdiction. Northwestern asserts that original federal jurisdiction exists by way of 28 U.S.C. § 1332, the diversity jurisdiction statute, which grants the district courts "original jurisdiction of all civil actions where the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between—(1) citizens of different states...."[2] North-

western asserts that once original jurisdiction is established, the Court has supplemental jurisdiction over the remaining plaintiffs' claims pursuant to 28 U.S.C. § 1367.[3] The parties do not dispute the citizenship requirement of this statute, but rather the amount in controversy requirement. Plaintiffs claim that the amount in controversy does not exceed $75,000, and that Northwestern's calculations to the contrary are too speculative a platform upon which this Court can base diversity jurisdiction.

The parties also raise an important issue that is greatly unsettled in the law today. This issue is whether Congress's enactment of the Judicial Improvements Act of 1990, which added 28 U.S.C. § 1367, the supplemental jurisdiction statute quoted above, overruled the United States Supreme Court's 1973 decision in *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). In *Zahn,* the Court held that "[e]ach plaintiff in a Rule 23(b)(3) class action must satisfy the jurisdictional amount, and any plaintiff who does not must be dismissed from the case—'one plaintiff may not ride in on another's coattails.'" *Id.* at 301, 94 S.Ct. 505 (*quoting Zahn v. International Paper Co.,* 469 F.2d 1033, 1035 (2d Cir.1972)). The Court held that this rule flowed naturally from its prior holding in *Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), where the Court held impermissible the aggregation of separate and distinct claims of class-action plaintiffs in an attempt to meet the statutory

---

**1.** "The propriety of removal thus depends on whether the case originally could have been filed in federal court." *City of Chicago v. International College of Surgeons,* 522 U.S. 156, 163, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997).

**2.** "Subject matter jurisdiction is conferred and defined by statute. It cannot be created by the consent of the parties, nor supplanted by considerations of convenience and efficien-

cy." *Morrison v. Allstate Indemnity Co.,* 228 F.3d 1255, 1261 (11th Cir.2000) (citations omitted).

**3.** Section 1367 grants district courts the power to exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367.

amount in controversy requirement for diversity jurisdiction.[4] However, as mentioned above, 28 U.S.C. § 1367 allows a district court to exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The question is, then, did the enactment of the supplemental jurisdiction statute implicitly override the Supreme Court's holding in *Zahn* that each and every putative class-action plaintiff must individually satisfy the amount in controversy requirement?

The question is one that has vexed and split federal courts across the country.[5] Several courts of appeals have held that *Zahn* remains good law, despite the 1990 enactment of Section 1367. *See Trimble v. Asarco, Inc.,* 232 F.3d 946 (8th Cir.2000); *Meritcare, Inc. v. St. Paul Mercury Ins. Co.,* 166 F.3d 214 (3d Cir.1999); *Leonhardt v. Western Sugar Co.,* 160 F.3d 631 (10th Cir.1998). Other circuits have concluded that in passing Section 1367, Congress overruled the holding in *Zahn. See Rosmer v. Pfizer Inc.,* 263 F.3d 110 (4th Cir.2001); *Gibson v. Chrysler Corp.,* 261 F.3d 927 (9th Cir.2001), *petition for cert. filed,* —— U.S. ——, 122 S.Ct. 903, 151 L.Ed.2d 872, 70 U.S.L.W. 3348 (2001); *Stromberg Metal Works v. Press Mech., Inc.,* 77 F.3d 928 (1996); *In re Abbott Labs.,* 51 F.3d 524 (5th Cir.1995), *aff'd by equally divided Court sub nom. Free v. Abbott Labs.,* 529 U.S. 333, 120 S.Ct. 1578, 146 L.Ed.2d 306 (2000). While it appeared that the Supreme Court was ready to settle this issue when it granted certiorari in *In re Abbott Laboratories,* it declined to do so when it affirmed the Fifth Circuit's decision by an equally divided Court with Justice O'Connor taking no part in the consideration or decision of the case. It is well settled that "an unexplained affirmance by an equally divided court [is] a judgment not entitled to precedential weight no matter what reasoning may have supported it." *Rutledge v. United States,* 517 U.S. 292, 304, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996).

This Court is cognizant of the weighty considerations involved on both sides of this argument. However, because the Court concludes that even assuming Congress *did* overrule *Zahn's* class-action requirement in enacting Section 1367—the position advocated here by Northwestern—this Court's *original* jurisdiction has not been established, and therefore there is no need to enter the *Zahn* –Section 1367 fray. The Court shall leave that issue for another day.

■ Before turning to the specifics of the issue presented by this motion to remand, the Court notes the following by way of background. "It is by now axiomatic that the inferior federal courts are courts of limited jurisdiction. They are 'empowered to hear only those cases with-

---

**4.** 89 S.Ct. at 1057 ("The doctrine that separate and distinct claims could not be aggregated was never, and is not now, based upon the categories of old Rule 23 or of any rule of procedure. That doctrine is based rather upon this Court's interpretation of the statutory phrase 'matter in controversy.' ").

**5.** The Eleventh Circuit has not yet had occasion to rule on the merits of this issue, although it has come close. *See Morrison v. Allstate Indemnity Co.,* 228 F.3d 1255, 1274 (11th Cir.2000):

Consequently, ... attributing the attorney's fees in this case to the nine named plaintiffs would establish the requisite amount in controversy as to those plaintiffs and—*assuming that § 1367 did overrule the* Zahn *decision* —supplemental jurisdiction would extend to the claims of the entire class. *We need not reach the supplemental jurisdiction question, however,* .... (emphasis added). The court took note of the circuit split that the issue has caused. *See id.* at 1262 n. 5.

in the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *University of So. Ala. v. American Tobacco Co.*, 168 F.3d 405, 409 (11th Cir.1999) (*quoting Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir.1994)). "A necessary corollary to the concept that a federal court is powerless to act without jurisdiction is the equally unremarkable principle that a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage of the proceeding." *Id.* at 410; *see also Kirkland v. Midland Mortgage Co.*, 243 F.3d 1277, 1279–80 (11th Cir.2001).

■ Specifically pertaining to removal of an action from a state court, "removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994). Flowing naturally from the judicial favoritism shown remand, which in turn stems from deeply embedded principles of federalism,[6] is the idea that a defendant seeking removal bears a not insignificant burden. *See Fowler v. Safeco Ins. Co. of Am.*, 915 F.2d 616, 617 (11th Cir.1990) ("In a removal action, the burden is on the defendant, not the plaintiff, to plead the basis for jurisdiction."); *Pease v. Medtronic, Inc.*, 6 F.Supp.2d 1354, 1356 (S.D.Fla.1998). In sum,

> [b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal

statutes strictly. Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court. A *presumption in favor of remand* is necessary because if a federal court reaches the merits of pending motion in a removed case where subject matter jurisdiction may be lacking it deprives a state court of its right under the Constitution to resolve controversies in its own courts.

*University of So.Ala.*, 168 F.3d at 411 (citations omitted and emphasis added). It is with the foregoing in mind that the Court turns to the merits of the instant motion.

### III. *Original Jurisdiction*

If the rule of *Zahn* has withstood the enactment of the supplemental jurisdiction statute, Northwestern would have to prove that each and every putative class member has met the amount in controversy in order to remove the entire case to federal court. *See* 414 U.S. at 301, 94 S.Ct. 505. If not, it appears that those plaintiffs who did meet this amount could stay, and those who did not would be dismissed from the federal action. *See id.* (stating that "any plaintiff who does not [meet the jurisdictional amount] must be dismissed from the case....."). However, even assuming the alternative—again, the position advocated here by the party seeking federal jurisdiction—that the strict rule enunciated in *Zahn* has been rendered nugatory by Section 1367, Northwestern still must prove that this Court has original jurisdiction such that supplemental jurisdiction may be asserted over "all other claims that are so

---

**6.** *See, e.g., Victory Carriers, Inc. v. Law*, 404 U.S. 202, 212, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971):

> "The power reserved to the states, under the Constitution, to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the judiciary sections of

the Constitution.... Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which [a federal] statute has defined."

(*quoting Healy v. Ratta*, 292 U.S. 263, 270, 54 S.Ct. 700, 78 L.Ed. 1248 (1934)).

related to claims in the action within such original jurisdiction that they form part of the same case or controversy...." 28 U.S.C. § 1367. This Northwestern has failed to do, and the case shall therefore be remanded to the state court from whence it came.

■ Multiple plaintiffs cannot in the vast majority of cases aggregate the value of their claims to meet the jurisdictional threshold. In other words, "the modern class action does not alter the well-settled limitation on aggregating the claims of multiple plaintiffs." *Morrison*, 228 F.3d at 1263 (*citing Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969)). "Consequently, the claims of putative class members may only be aggregated to satisfy the amount in controversy requirement if the class members are suing to 'enforce a single title or right, in which they have a common and undivided interest.'" *Id.* (*quoting Zahn*, 414 U.S. at 295, 94 S.Ct. 505). This "common right" exception will be addressed below.

■ Because Northwestern cannot aggregate the putative class plaintiffs' claims in order to meet the jurisdictional amount, at least one plaintiff must have a claim for greater than $75,000 (and have diverse citizenship from the defendant) in order to establish original federal jurisdiction. This must be confirmed before the issue of *supplemental* jurisdiction even arises. The plain language of the statute in question bears this out: "[I]n any civil action of

which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction...." 28 U.S.C. § 1367. Northwestern does not predicate its assertion of original federal diversity jurisdiction on the value of either Messrs. Klempner or Ramos, the named plaintiffs. Rather, in its Notice of Removal and opposition to the plaintiffs' motion to remand, Northwestern argues that it "has identified at least one member of the putative class whose claim for compensatory damages appears ... to meet and exceed the $75,000 threshold." Notice of Removal § 6. In support of this, Northwestern has submitted two declarations of Steven J. Stribling, a Senior Actuary for Northwestern. Mr. Stribling states that the unnamed plaintiff-policyholder's Policy would earn "a total of $80,248.17 in dividends [discounted to present value] over the life of the policy ... [and that] [t]his figure is premised upon the continuation of the non-guaranteed 2001 dividend scale (calculations and assumptions)." Supp.Decl. of Steven J. Stribling ¶ 5. Northwestern's attempts to establish the amount in controversy such that this Court would have original jurisdiction fail for two reasons.

■ First, the Court concludes that the alleged value of the claims of unnamed plaintiffs cannot be used to establish original diversity jurisdiction. The only circuit court squarely to have addressed this issue reached the same result. *See Gibson*, 261 F.3d at 940–41.[7] In *Gibson*, the Ninth

---

7. Other opinions concur in this conclusion. In *Zahn* itself, Justice Brennan's dissent, joined by Justices Douglas and Marshall, noted that "the claims of *named plaintiffs* provided the District Court with jurisdiction over the diversity action," 414 U.S. at 305, 94 S.Ct. 505 (emphasis added), and went on to argue that this should have supported what was at that time called "ancillary jurisdiction" over the remaining class members' claims. *See id.* at 306–07, 94 S.Ct. 505. In *Rosmer*, the Fourth Circuit held that "§ 1367 confers

supplemental jurisdiction in diversity class actions, *so long as one named plaintiff* has a claim giving a federal court original jurisdiction." 263 F.3d at 114 (emphasis added). Similarly, in *In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599 (7th Cir.1997), the Seventh Circuit unequivocally stated that "[a]t least *one named plaintiff* must satisfy the jurisdictional minimum. If he does, the other named plaintiffs and the unnamed class members can ... [use supplemental jurisdiction to] piggyback on that

Circuit held that the enactment of § 1367 *did* overrule *Zahn, see id.* at 934, the position for which Northwestern here argues, but "reject[ed] th[e] argument" that "there is such supplemental jurisdiction when the claim of an *unnamed* class member satisfies the amount-in-controversy requirement." *Id.* at 940. The court first noted that

> a class action, when filed, includes only the claims of the named plaintiff or plaintiffs. The claims of unnamed class members are added to the action later, when the action is certified as a class under Rule 23. There thus cannot be "original jurisdiction" within the meaning of subsection (a) [of § 1367] over the claims of unnamed class members and there is therefore no supplemental jurisdiction either.

*Id.* Several considerations supported this conclusion, all of which this Court finds persuasive. First, "[e]xamining only the claims of named class plaintiffs for purposes of the amount-in-controversy requirement in diversity class actions mirrors the treatment of the complete diversity requirement." *Id.* For purposes of determining subject matter jurisdiction in a diversity class action, only the citizenship of the named plaintiffs is relevant. *See Supreme Tribe of Ben–Hur v. Cauble,* 255 U.S. 356, 366–67, 41 S.Ct. 338, 65 L.Ed. 673 (1921); *Snyder v. Harris,* 394 U.S. 332, 340, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969); *Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1288 (11th Cir.1998) (noting "the well-settled rule for class actions that a court should consider only the citizenship of the named parties to de-

termine whether there is diversity jurisdiction."); *see also, e.g., Rosmer,* 263 F.3d at 117 n. 4 ("In *Ben–Hur,* the Supreme Court held that in class actions, only the named plaintiffs must have complete diversity. In other words, absent class members may come from the same state as the opposing party so long as all named plaintiffs are diverse."); *Gilman v. BHC Secs., Inc.,* 104 F.3d 1418, 1421 n. 3 (2d Cir. 1997) ("In a class action, there is diversity of citizenship if each named plaintiff is of diverse citizenship as to each defendant."). It would seem rather anomalous to look only to the characteristics of the named plaintiffs for one prong of § 1332—the citizenship prong—only then to turn around and greatly expand this view to any other putative class member in assessing the other prong—the requisite amount in controversy.

Second, as the *Gibson* court noted,

> including the claims of unnamed class members is an "impractical and uncertain method of determining federal jurisdiction," because those members are free to opt out of the class, and because a denial of class certification would prevent the court from taking jurisdiction over the claims of the unnamed class members. Either of these two events would deprive the district court of jurisdiction over the entire class action, and could occur well into the litigation, after the expenditure of substantial time and effort by the parties and the district court.

261 F.3d at 941 (internal citation omitted). Because of the mandatory nature of a re-

---

plaintiff's claim." *Id.* at 607 (emphasis added). Further, as the *Gibson* court noted, "[s]econdary authorities agree" with this position. 261 F.3d at 941 (citing 5 James Wm. Moore *et al.,* Moore's Federal Practice § 23.07[3][c] at 23–47 (3d ed. 1998) ("[E]ven if 28 U.S.C. § 1367 reverses *Zahn* ... the

statute does not permit supplemental jurisdiction over a class action in which *unnamed* class members meet the amount-in-controversy requirement, but the named plaintiff does not.")). These findings further reinforce the Court's conclusion.

mand, in the case of a removed action, *see* 28 U.S.C. § 1447(c); or dismissal, in the case of an action filed in the first instance in federal court, *see Sewell v. Merrill Lynch et al.,* 94 F.3d 1514, 1518 (11th Cir.1996) ("If the court in which an action is brought has no jurisdiction of the subject matter, the suit must be dismissed...."), the following scenario would not be unheard of under Northwestern's theory: a class action is filed by one named plaintiff in state court; the defendant then timely removes it to federal court based on diversity of the parties and the allegation that some unnamed possible class member's claim exceeds $75,000. The case proceeds in federal court to the stage at which the plaintiff moves for class certification, whereupon the court, for any number of reasons, denies the motion. Or the class member with the sufficiently valuable claim could opt out of the class. This could come "well into the litigation," as noted by the *Gibson* court, and risks a substantial squandering of relatively scarce federal judicial resources. This presents a powerful argument against looking to an unnamed plaintiff in determining the amount in controversy. In sum, the Court finds that original federal

diversity jurisdiction cannot be predicated upon the claim of an unnamed putative class member.[8]

The parties also dispute the issue of whether the monetary value of the unnamed putative class member's claim has been sufficiently established. Striking "the proper balance between a plaintiff's right to choose his forum and a defendant's right to remove," the Eleventh Circuit has concluded that "[w]here a plaintiff has made an unspecified demand for damages," "a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds" the jurisdictional amount. *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1356–1357 (11th Cir. 1996), *overruled on other grounds by Cohen v. Office Depot,* 204 F.3d 1069 (11th Cir.2000). It appears that, were the Court to conclude that the value of an unnamed plaintiff's claim could establish the jurisdictional threshold, the valuation Northwestern here asserts is too speculative to support federal jurisdiction. *See Vicksburg, S & P Ry. Co. v. Nattin,* 58 F.2d 979, 980 (5th Cir.1932) ("Jurisdiction is based on actuality, not prophecy....") (quoted in *Morrison,* 228 F.3d at 1270).[9] Therefore,

---

**8.** Northwestern relies on *Morrison* for the proposition that the Eleventh Circuit's position is that the value of unnamed class members' claims may provide the jurisdictional amount. However, in *Morrison,* it was the plaintiffs who were trying to establish federal jurisdiction. After noting that "it seems evident that none of the named plaintiffs possesses an individual claim that approaches the $75,000 required for diversity jurisdiction," the court remanded the case "to grant the plaintiffs an opportunity to prove there are class members" who can meet this amount. 228 F.3d at 1275. It appears that plaintiffs could seek to add those unnamed class members with sufficient claims as named plaintiffs, thus establishing diversity jurisdiction over those plaintiffs' claims and thus raising the *Zahn* — § 1367 issue. Further, this statement is not a ruling on the

merits of the issue Faced with the analysis of *Gibson,* as well as the authority cited *supra* at note 7, the Court is not swayed by Northwestern's argument under *Morrison.* Northwestern also points the Court to *Howard v. Globe Life Ins. Co.,* 973 F.Supp. 1412, (N.D.Fla. 1996), in support of their position. There, the court remarked in a footnote unsupported by citation that "[a]lthough not implicated in this case, it appears that the class member meeting the jurisdictional amount may not have to be named, as long as at least one identified member of the class meets the requirement." *Id.* at 1416 n. 5. This remark does not alter this Court's analysis of the issue.

**9.** Although far from dispositive, the nature of plaintiffs' declaratory judgment claim also supports the Court's conclusion that the alleged amount in controversy of the unnamed

the same result—a lack of federal subject matter jurisdiction—would be reached even if the Court could properly consider the value of the unnamed putative plaintiff's claim.

■ As mentioned above, however, aggregation of class members' claims is appropriate "when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest...." *Zahn*, 414 U.S. at 294, 94 S.Ct. 505 (quoting *Troy Bank of Troy, Ind. v. G.A. Whitehead & Co.*, 222 U.S. 39, 40–41, 32 S.Ct. 9, 56 L.Ed. 81 (1911)). "Despite pervasive criticism of the 'separate and distinct' versus 'common and undivided' distinction as arcane and confusing, there appears to be a common thread in the relevant case law—the presence of a 'common and undivided interest' is rather uncommon, existing only when the defendant owes an obligation to the group of plaintiffs as a group and not to the individuals severally." *Morrison*, 228 F.3d at 1262. Further, "[f]or amount in controversy purposes, ... it is the nature of the right asserted, not that of the relief requested, that determines whether the claims of multiple plaintiffs may be aggregated." *Id.* at 1264. With these principles in mind, the Court finds Northwestern's attempts to pigeonhole this case into the "common right" exception unavailing.

In *Gilman v. BHC Securities, Inc.*, 104 F.3d 1418 (2d Cir.1997) (cited with approval in *Morrison*, 228 F.3d at 1264, for its explanation of the intricacies of the common fund exception), a class action was brought against BHC Securities, Inc. ("BHC"), a securities firm that had executed securities transactions on behalf of the plaintiff and other putative class members. The complaint alleged that BHC had violated New York securities laws and breached its fiduciary duties by not disclosing its receipt of "order flow payments," which the plaintiff alleged essentially to be tantamount to kickbacks.[10] The putative class action was filed in state court and then timely removed to federal court on BHC's claim that, although none of the individual potential class members' claims came anywhere close to the jurisdictional requirement, the case fit the common fund exception. The Second Circuit rejected this argument, concluding that the plaintiff's claims "regarding the impropriety and misuse of order flow payments *do not* implicate a 'single indivisible res,' and *could be* adjudicated on an individual basis, because the putative class members have no 'common and undivided interest' in those payments. The common fund exception therefore is inapplicable in this case." *Id.* at 1423.[11] The court stated that "whether successful

putative class member is too speculative. In their complaint, plaintiffs "request a declaration that Northwestern Mutual is required to pay him and each class member an annual dividend from the company's divisible surplus when such a surplus exists." Compl. ¶ 30. The existence of such a surplus itself is an inherent contingency.

**10.** The details of the factual setting are more complicated than laid forth here, and can be found at 104 F.3d at 1419–21.

**11.** Northwestern quotes *Gilman* in support of their position, pointing out the language wherein the Second Circuit noted that "the

paradigm cases allowing aggregation of claims are those which involve an indivisible res, such as ... an insurance policy." 104 F.3d at 1423 (internal quotation and citation omitted). However, the difference here is that there is no *one* insurance policy upon which plaintiffs' claims are grounded, but rather several. "[W]hen multiple plaintiffs assert rights arising from individual insurance policies, their claims are separate and distinct, and accordingly, may not be aggregated." *Morrison*, 228 F.3d at 1264 (citing *Alvarez v. Pan Am. Life Ins. Co.*, 375 F.2d 992, 993–94 (5th Cir.1967); *Troup v. McCart*, 238 F.2d 289, 295–96 (5th Cir.1957)).

vindication of the [plaintiffs'] right will lead to a single pool of money that will be allocated among the plaintiffs" is *not* the correct inquiry in a common-fund case. *Id.* at 1427. What is important is "the nature of the right asserted...." *Id.; see also Morrison,* 228 F.3d at 1264 ("[I]t is the nature of the right asserted, not that of the relief requested, that determines whether the claims of multiple plaintiffs may be aggregated."). Because the common fund exception had not been met due to the individual claims, the Second Circuit remanded the case to the district court with instructions to remand it to state court. Like the situation in *Gilman,* the claims here, although related in the fact that it is Northwestern's denial of an allegedly owed dividend upon which they are predicated, "do *not* implicate a 'single indivisible res,' and *could* be adjudicated on an individual basis...." Therefore, this situation does not fit the common-fund mold.

This conclusion is further bolstered by recent precedent from this circuit. *See Morrison,* 228 F.3d at 1263–64. In *Morrison,* a putative class action arose out of a dispute as to whether certain insurance policies covered the diminished value of a vehicle after it was damaged and repaired. There were nine named plaintiffs, each having a different insurance policy issued by one of the nine defendants, but the policy language in question was not materially different. *See id.* at 1259 n. 2. Specifically, the court noted that "[t]he dispute ... centers on whether, under Florida law, this policy language requires the defendants to compensate the plaintiffs for the diminished value of their vehicle after its has been [*sic*] repaired—the difference between the pre-accident market value of the vehicle and its market value after it has been repaired." *Id.* at 1259. Raising the issue of federal jurisdiction *sua sponte* on appeal, the court held that the putative class members could not aggregate their claims under the common fund doctrine "[b]ecause each member of the [class and subclass] ... seeks damages resulting from the defendants' alleged breach of individual insurance policies...." *Id.* at 1264. This conclusion flowed from the predicate principle that "when multiple plaintiffs assert rights arising from individual insurance policies, their claims are separate and distinct, and accordingly, may not be aggregated." *Id.*

The same scenario is present in the case at bar. Here, the putative class members each hold individual disability insurance policies, containing language that is alleged to give them a right to share in Northwestern's annual divisible surplus. A conclusion that the disputed language does indeed give them this right, like the situation in *Morrison,* would lead to damages under each individual's policy. In sum, this is not a case involving a "common and undivided interest." [12]

■ Based on the foregoing analysis, especially when viewed against the backdrop that "all doubts about jurisdiction should be resolved in favor of remand to

---

12. In support of its common fund argument, Northwestern states that these claims "cannot be adjudicated without implicating the rights of all members of Northwestern Mutual since the divisible surplus of the company is made up of the premiums paid by all policyholders," and therefore any monetary payout would be felt by all Northwestern policyholders. Def. Northwestern Mutual's Resp. to Pls.' Mot. to Remand at 6. The Court agrees with the plaintiffs' reply to this statement, that if this were the test for whether the common-fund case has been presented, "plaintiffs suing defendants with limited resources ... would always fall under the common fund exception," Pls.' Reply in Support of Mot. to Remand at 10, and that this analysis misses the fundamental issue of a "common and undivided interest." *Zahn,* 414 U.S. at 294, 94 S.Ct. 505.

state court," *University of So.Ala.*, 168 F.3d at 411, the Court finds that it lacks subject matter jurisdiction over the action and that the case should be remanded. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). "This provision is mandatory...." *University of So.Ala.*, 168 F.3d at 410. Although a motion to dismiss is currently pending in this Court (DE# 10), "a federal court must remand for lack of subject matter jurisdiction notwithstanding the presence of other motions pending before the court." *Id.* at 411. Accordingly, pursuant to 28 U.S.C. § 1447(c), it is hereby

ORDERED AND ADJUDGED that this case is REMANDED to the Circuit Court of the Eleventh Judicial Circuit in and for Miami–Dade County, Florida.