**Mark LUTZ, Plaintiff,**

v.

**PROTECTIVE LIFE INSURANCE CO., Defendant.**

**No. 03–81181–CIV.**

United States District Court, S.D. Florida.

June 14, 2004.

Richard Mark Benrubi, Liggio Benrubi & Williams, West Palm Beach, FL, for plaintiff.

June G. Hoffman, Edward Joy Briscoe, Fowler White Burnett, Miami, FL, Rik S. Tozzi, W. Michael Atchison, Anthony C. Harlow, Alfred H. Perkins, Starnes & Atchison, Birmingham, AL, for defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND

RYSKAMP, District Judge.

THIS CAUSE comes upon Plaintiff's Motion for Remand [DE 14], filed March 2, 2004. Defendant filed its Response [DE 28] on April 23, 2004, and Plaintiff replied [DE 34] on May 25, 2004. This matter is now ripe for adjudication.

### I. Background

Plaintiff originally filed this action in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County against Defendant Protective Life Insurance Co., a health insurance company that issued a group health insurance policy to a "dry trust" known as the American Association of Employed Persons Trust (AAEPT). This policy was marketed and sold to Plaintiff and other potential members of the putative class.[1]

In March of 1992, Plaintiff purchased the aforementioned policy from Defendant. While the initial premium was only $68.00,

the subsequent premiums were increased to the following amounts:

| | |
|---|---|
| December 2000: | 378.82 |
| June 2001: | 471.28 |
| November 2001: | 702.48 |
| December 2002: | 875.84 |
| August 2003: | 1,122.76. |

Plaintiff asserts that Defendant improperly discriminated against the class members by assessing premium rates based upon claims history and health status. Count I of the Complaint alleges a breach of contract claim, and Count II is an action for declaratory relief pursuant to Chapter 86 of the Florida Statutes. Plaintiff specifically claims that this action is not subject to the provisions of the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*

Defendant subsequently filed a Notice of Removal [DE 1] on December 30, 2003, claiming that the Court possesses jurisdiction under both 28 U.S.C. § 1331 (federal question) and § 1332 (diversity). However, Defendant only suggests that the Court "may" have jurisdiction under § 1331, and neither party addresses § 1331 in their pleadings. Instead, both parties rely solely on § 1332. As such, this Court will look only to § 1332 in assessing whether it possesses jurisdiction in this cause. Both parties agree that complete diversity exists. The remaining question for this Court is whether the amount in controversy exceeds $75,000.

### II. Discussion

#### A. Standard of Law

Federal courts have the power to exercise jurisdiction over "any civil action brought in a state court of which the district courts of the United States have orig-

---

1. Plaintiff filed this claim on behalf of himself and all others similarly situated.

inal jurisdiction." 28 U.S.C. § 1441(a). A civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court. 28 U.S.C.A. § 1441(b). District courts have original jurisdiction over civil actions where the matter in controversy exceeds $75,000 and the parties are citizens of different states. 28 U.S.C. § 1332.

 Removal statutes are narrowly construed in favor of remand. *See Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). The removing party bears the burden of establishing jurisdiction. *See Diaz v. Sheppard,* 85 F.3d 1502, 1505 (11th Cir.1996). This Court "must remand to state court any case that was removed improvidently or without necessary jurisdiction." *See Campos v. Sociedad Aeronautica De Medellin Consolidada, S.A.,* 882 F.Supp. 1056, 1057 (S.D.Fla.1994). "Where there is any doubt concerning jurisdiction of the federal court on removal, the case should be remanded." *Id.* (citing *Woods v. Firestone Tire & Rubber Co.,* 560 F.Supp. 588, 590 (S.D.Fla.1983)).

## B. Plaintiff's Motion for Remand

As previously stated, the parties agree that complete diversity exists. Thus, the question remaining for this Court is whether the amount in controversy exceeds the mandatory $75,000. Defendant asserts that the amount in controversy is satisfied on three separately sufficient grounds: 1) the Plaintiff's individual claim exceeds $75,000; 2) the individual claims of

unnamed class members exceed $75,000; and 3) the claims for injunctive and declaratory relief must be aggregated, and their value exceeds $75,000. The Court will discuss each of these assertions in turn.

### 1. The Plaintiff's Individual Claim

 Defendant's first contention is that Plaintiff's consequential damages alone total at least $22,811.32, which represents the amount in premiums Plaintiff has paid in excess of $68 since December 2000.[2] In arriving at this number, Defendant assumes that it could not legally increase the premiums whatsoever from the initial premium of $68. However, Plaintiff does not dispute that Defendant was entitled to increase the premiums over time equally based upon normal rating factors. Instead, Plaintiff seeks damages only for the component of the total premium increase that is attributable to individual health status-related factors. *See* Complaint, at ¶¶ 14, 16c, 18, 27, 28c. Plaintiff does not state that the entire premium increase was improper, but only that it was improper to increase the premiums based upon "claims history/health status." *Id.* at ¶ 14. As such, Plaintiff's alleged consequential damages total an amount smaller than that alleged by Defendant; yet Defendant, who carries the burden of establishing jurisdiction, does not indicate what that amount might be.

Defendant also asserts that the value of Plaintiff's claim includes the value of the entire insurance coverage under the policy. Thus, Defendant contends that, because Plaintiff is entitled to receive up to

---

**2.** Defendant arrives at this sum by first subtracting $68 from the premium rates in December 2000, June 2001, November 2001, December 2002, and August 2003. Defendant then multiplies that amount in excess by

the number of months those excess rates were charged, and adds those numbers together to arrive at $22,811.32. *See* Notice of Removal, at ¶¶ 15–16.

$2,000,000 in benefits for medical claims under the plan, the $2,000,000 should be considered when determining the amount in controversy. However, the cases Defendant cites in support of this proposition are inapposite. In each of the cases, the validity of the insurance policy itself was at issue, while here Plaintiff's claims involve the excess amount of premiums charged. *See, e.g., Guardian Life Ins. Co. of Am. v. Muniz,* 101 F.3d 93, 94 (11th Cir.1996) (stating that the plaintiff filed the action seeking *cancellation* of a life insurance policy). Plaintiff is not seeking enforcement nor questioning the validity of the policy itself.

If anything, the cases cited by Defendant support Plaintiff's position that the face value of the policy cannot be taken into consideration in this case. For example, in *Muniz,* the Eleventh Circuit noted that the face value of the policy in that situation was the amount that measured the loss the plaintiffs would suffer if the policies were not cancelled. *Id.* However, Plaintiff is clearly seeking only those sums it has been charged in excess of the proper premium amount, and thus the proper measure is what Plaintiff will suffer if these consequential damages are not awarded. As already stated, this amount is somewhere under the $22,811.32 alleged by Defendant.

Such a conclusion is echoed in the other cases cited by Defendant. In *In re Minn. Mut. Life Ins. Co. Sales Practices Litig.,* the Eighth Circuit considered the face value of an insurance policy for diversity purposes because it was the face value of the policy that the company would have had to pay had the Appellants prevailed on their claims. 346 F.3d 830, 835 (8th Cir.2003). That court also mentioned that the value of future benefits is considered "where the validity of the policy is at issue." *Id.* (quoting *Mass. Cas., Ins. Co. v. Harmon,* 88 F.3d 415, 416 (6th Cir.1996)). However, Plaintiff is not attacking the validity of the policy, nor will Plaintiff be awarded the face value of the policy if he prevails on his claims. Thus, the present situation cannot be compared to that in *Minnesota Mutual. See also Hawkins v. Aid Ass'n for Lutherans,* 338 F.3d 801, 805 (7th Cir.2003) (contrasting when and when not to consider the face value of a policy and concluding that "when the validity of a policy (as opposed to the insurer's obligation to pay) is in dispute, the face value of that policy is a proper measure of the amount-in-controversy"); *Harmon,* 88 F.3d at 416–17 (stating that future potential benefits *may not* be taken into consideration when computing the amount in controversy where the controversy concerns "merely the extent of the insurer's obligation with respect to disability benefits and not the validity of the policy"); *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 962 F.Supp. 450, 503 (D.N.J.1997) ("[C]ourts have uniformly held that, where the validity of the policy is at issue, the proper measure is the face value.").

These cases demonstrate that the face value of the policy is taken into consideration when the validity of the policy is at issue, and not in situations, as here, where it is not. On the other hand, a comparable situation is found in *Wilson v. Mass. Mut. Life Ins. Co.* 1999 WL 33456150 (D.N.M. May 27, 1999). In *Wilson,* the plaintiff's claims involved alleged overcharges and did not concern the validity of the policy. *Id.* at *2. As such, the court did not look to the face value of the policy in determining the amount in controversy. *Id.* The court noted that the plaintiff had referred to the policy in his complaint only to demonstrate the need for injunctive relief. *Id.* Like-

wise, Plaintiff is seeking only those funds he has been overcharged by Defendant, and he refers to the policy simply because he must in order to demonstrate his cause. Thus, this Court concludes that the face value of Plaintiff's policy cannot be considered in the computation of the amount in controversy.

Finally, Defendant argues that the value of attorney's fees in this cause meets the amount in controversy requirement. Plaintiff does not refute that attorney's fees are properly considered in determining the amount in controversy. However, Defendant claims that the attorney's fees incurred throughout the entire litigation must be included, while Plaintiff claims that it is only those attorney's fees expended at the time of removal from state court. The Eleventh Circuit has simply stated that "*a reasonable amount* of those fees is included in the amount in controversy." *Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255, 1265 (11th Cir.2000) (emphasis added). It seems likely that a "reasonable amount" would include more than just those fees induced before removal.

■■ Yet even if the entire amount of attorney's fees is to be included in the amount in controversy, it does not appear "more likely than not" that the attorney's fees in this cause will be as excessive as Defendant claims. For example, after a case has been litigated, the starting point in awarding attorneys' fees is to multiply the number of hours reasonably expended by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). While this case has not yet been litigated, it seems logical that Defendant should follow the same steps it would have to take if attempting to prove attorney's

fees after litigation. However, Defendant only guesses at the hourly fee collected by Plaintiff's attorney and merely provides an affidavit from an attorney who opines that the attorney's fees in this case will exceed $75,000. Not only is this opinion not based upon an estimated amount of hours to be expended in litigating this case, but the fees of $75,000 appear excessive when compared to the mere $22,811.32 that Defendant claims Plaintiff could recover. Furthermore, any doubt concerning jurisdiction is to be decided in favor of remand. *See Shamrock*, 313 U.S. at 108, 61 S.Ct. 868; *Campos*, 882 F.Supp. at 1057. Because Defendant has not shown it more likely than not that the *reasonable* amount of attorney's fees in this cause will exceed the $75,000 threshold, this Court cannot determine that such attorney's fees meet the amount in controversy requirement.

### 2. The Individual Claims of Unnamed Class Members

Defendant next alleges that there are unnamed class members whose claims exceed $75,000, while Plaintiff maintains that only the claims of named class members may be included in calculating the amount in controversy. Defendant cites a number of cases that allegedly support its claim, but each is a stretch. For example, Defendant cites *Darden v. Ford Consumer Fin. Co.* for the proposition that a district court may exercise supplemental jurisdiction over an entire class if one of the class members' claims meets the minimum jurisdictional amount, "even if the qualifying class member is not one of the named plaintiffs." Defendant's Response, at 8; *see also Darden*, 200 F.3d 753 (11th Cir. 2000). However, the sentence cited in *Darden* reads, "[a]t least one individual plaintiff in a class action must have a damage claim greater than $75,000 for a

federal court to have diversity jurisdiction over the case." *Darden,* 200 F.3d at 756. Clearly, the Eleventh Circuit did not state, as Defendant claims, that such jurisdiction applies "even if" a class member is not a named plaintiff. Instead, this case provides no guidance in determining whether an unnamed plaintiff is considered when determining the amount in controversy.

Defendant also cites *Forest v. Penn Treaty Am. Corp.,* which, unlike *Darden,* discusses whether an unnamed plaintiff can be used in the Eleventh Circuit to establish the jurisdictional threshold. 270 F.Supp.2d 1357 (M.D.Fla.2003).[3] After noting that the "Eleventh Circuit has not squarely addressed this issue," the court concludes that a few Circuit decisions "suggest" that the claims of an unnamed plaintiff may be used to calculate the amount in controversy. *Id.* at 1365–66; *see also Leonard v. Enterprise Rent A Car,* 279 F.3d 967 (11th Cir.2002); *Kirkland v. Midland Mortgage Co.,* 243 F.3d 1277 (11th Cir.2001); *Morrison,* 228 F.3d 1255. However, none of these decisions dealt squarely with the issue of whether an unnamed class member can be used to meet the amount in controversy requirement.[4] In addition, each of these decisions

was decided before the Eleventh Circuit's opinion in *Allapattah Serv. v. Exxon Corp.,* which this Court finds controlling. 333 F.3d 1248 (11th Cir.2003).

■ In *Allapattah,* the issue before the Eleventh Circuit was whether the supplemental jurisdiction statute, 28 U.S.C. § 1337, overrules the United States Supreme Court decision in *Zahn v. Int'l Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). *Id.* at 1253.[5] In discussing this issue, the Court stated the following:

> Whether § 1367 overrules *Zahn* has been held the subject of considerable debate among our sister circuits, which have split on the issue. *See Rosmer v. Pfizer Inc.,* 263 F.3d 110, 114 (4th Cir. 2001) (holding "that § 1367 confers supplemental jurisdiction in diversity class actions, so long as *one named plaintiff"* satisfies the minimum amount in controversy requirement), *cert. dismissed,* 536 U.S. 979, 123 S.Ct. 14, 153 L.Ed.2d 878 (2002); *Gibson v. Chrysler Corp.,* 261 F.3d 927, 934 (9th Cir.2001) (holding the same), *cert. denied,* 534 U.S. 1104, 122 S.Ct. 903, 151 L.Ed.2d 872 (2002)...; *In re Abbott Labs.,* 51 F.3d 524, 528–29 (5th

---

3. This Court should note that it is not bound to follow those decisions of other district courts.

4. Defendant also cites the United States Supreme Court decision *Devlin v. Scardelletti,* 536 U.S. 1, 122 S.Ct. 2005, 153 L.Ed.2d 27 (2002), stating, "[i]f the Supreme Court considers unnamed class members as parties for appeal purposes, unnamed class members should be considered when determining the amount in controversy." Defendant's Response, at 15. However, the Supreme Court itself stated that the issue in *Devlin* did not "implicate the jurisdiction of the courts under Article III of the Constitution." *Devlin,* 536 U.S. at 7–8, 122 S.Ct. at 2009. *See also AAL High Yield Bond Fund v. Deloitte & Touche, LLP,* 361 F.3d 1305, 1309 (11th Cir.2004)

(stating that the Supreme Court in *Devlin* "framed the issue not as a jurisdictional question, but rather as a matter of determining whether the non-named class member qualified as a 'party' for purposes of Fed. R.App. P. 3(c)") (citations and footnote omitted). Because it is explicit that *Devlin* did not apply to jurisdictional issues, Defendant cannot now claim that the decision applies to this jurisdictional issue.

5. *Zahn* held that "[e]ach plaintiff in a Rule 23(b)(3) class action must satisfy the jurisdictional amount, and any plaintiff who does not must be dismissed from the case." *Zahn,* 414 U.S. at 301, 94 S.Ct. 505.

Cir.1995) (holding that as long as the *class representatives* meet the amount in controversy requirement, a district court may exercise supplemental jurisdiction over the members of the class who do not).

*Allapattah,* 333 F.3d at 1253 (footnote omitted) (emphasis added). The Eleventh Circuit then went on to "agree with [its] sister circuits" that § 1367 overrules *Zahn. Id.* at 1254. While Defendant objects that *Allapattah* concerns the overruling of *Zahn,* and not the issue of whether unnamed class members can meet the amount in controversy, this argument is not persuasive. The Eleventh Circuit clearly cited to circuit opinions holding that *named plaintiffs* must meet the amount in controversy, and then the Circuit Court unambiguously proceeded to agree with those circuits. As such, this Court agrees with Plaintiff that the claims of unnamed class members cannot be used in computing the amount in controversy. *See Klempner v. Northwestern Mut. Life Ins. Co.,* 196 F.Supp.2d 1233 (S.D.Fla. 2001).[6] Moreover, the Eleventh Circuit itself stated that district courts could exercise supplemental jurisdiction over the claims of class members whose claims do not meet the jurisdictional amount "as long as the district court has original jurisdiction over the claims of at least *one of the class representatives.*" *Allapattah,* 333

F.3d at 1256 (emphasis added); *see also Hudgins Moving & Storage Co., Inc. v. Am. Express Co.,* 292 F.Supp.2d 991, 1000 (M.D.Tenn.2003) (citing *Allapattah* for the proposition that § 1367 requires that the claim of at least one named plaintiff or class representative exceed $75,000).

Furthermore, even if this Court were to agree with Defendant that the claims of unnamed class members are considered when calculating the amount in controversy, Defendant's reasoning suffers from the same flaws as it did when calculating the Plaintiff's individual consequential damages. Defendant cites to two class members whose premium increases total over $70,000 each. However, such a calculation includes both legal increases and the alleged improper increases. Plaintiff is not claiming that all premium increases were improper, but only those based upon "claims history/health status," and therefore only those premium increases based upon claims history and health status should be included in Defendant's calculation. *See* Complaint, at ¶ 14. As such, Defendant has not shown that it is more likely than not that the claims of the unnamed claims members exceed $75,000.

Finally, it is telling that the Defendant acknowledges that a court in this district has concluded that unnamed plaintiffs may not satisfy the amount in controversy. *See* Defendant's Response, at 14 (citing

---

**6.** In *Klempner,* the court concluded that "the alleged value of the claims of unnamed plaintiffs cannot be used to establish original diversity jurisdiction." *Klempner,* 196 F.Supp.2d at 1238. The court reasoned that examining the claims of class members when determining the amount in controversy should mirror the treatment of the complete diversity requirement. *Id.* at 1239 (citing *Gibson,* 261 F.3d at 940–41). When determining complete diversity, the court only looks to the citizenship of the named plaintiffs. *Id.* Like-

wise, the court should only look to the named plaintiffs when determining the amount in controversy. *Id.* The court also reasoned that including the claims of unnamed class members is "impractical and uncertain," because those members are free to opt out of the class and because the denial of class certification would prevent jurisdiction over the claims of the unnamed class members. *Id.* (citing *Gibson,* 261 F.3d at 941). These same considerations apply to the case at hand.

*Klempner,* 196 F.Supp.2d 1233). If anything, this is an acknowledgment by Defendant that there is doubt concerning the treatment of unnamed plaintiffs. *See id.* at 18 ("This question is a controlling question of law for which there is substantial ground for difference of opinion.") This is yet another reason for this Court to remand this case, as doubt is to be resolved in favor of remand. *See Shamrock,* 313 U.S. at 108, 61 S.Ct. 868; *Campos,* 882 F.Supp. at 1057.

*3. Aggregation of the Declaratory and Injunctive Relief*

Defendant's final ground is that the claims for injunctive and declaratory relief must be aggregated and that their value exceeds $75,000. In essence, this claim contains two arguments: first, that the claims of the class members should be aggregated;[7] and second, that the value of such aggregated relief exceeds $75,000. Plaintiff contests both arguments.

 This Court will first consider whether the value of the injunctive relief exceeds $75,000. When calculating the amount in controversy, the value of injunctive or declaratory relief is "the value of the object of the litigation that would flow to the plaintiffs if the injunction were granted." *Leonard,* 279 F.3d at 973. This value is measured from the plaintiff's perspective; the cost to the defendant is irrelevant. *Morrison,* 228 F.3d at 1268 n. 9. The Defendant must show that the benefit plaintiffs will obtain from the injunction is "sufficiently measurable and certain to satisfy the . . . amount in controversy requirement." *Id.* at 1269 (quoting *Ericsson Ge Mobile Communications, Inc. v. Motorola Communications & Elec., Inc.,* 120 F.3d 216, 221 (11th Cir.1997)). If the monetary value of the requested injunctive relief is "too speculative and immeasurable to satisfy the amount in controversy requirement," this Court need not even address whether the injunctive relief should be aggregated. *Leonard,* 279 F.3d at 973.

In *Morrison,* the requested injunction would require the defendant automobile insurers to compensate the class members for diminished value on future damaged vehicle claims and to inform class members of their right to such compensation. *Morrison,* 228 F.3d at 1268. The court framed the value of such an injunction as "the present value of those future payments." *Id.* The court concluded that it was mere speculation as to whether and to what extent any class member would benefit financially from the injunction, as it would be impossible to know which class members would be in automobile accidents and thereafter assert claims for diminished value. *Id.* at 1269; *see also id.* at n. 12 ("Many things, all problematical, may occur to make the assessment for the next year and for future years wholly differ-

---

7. Interestingly, Defendant does not mention the aggregation of relief in its Notice of Removal. Instead, Defendant simply states that the value of Plaintiff's injunctive relief exceeds $75,000. Defendant did not argue for aggregation until filing his Response on April 23, 2004. Defendant's original response [DE 23] to Plaintiff's motion was filed on April 9, 2004. However, after Plaintiff filed a motion to strike [DE 26] certain portions of that response because it exceeded the jurisdiction-

al page limit and because it asserted new and different grounds for removal, Defendant filed a motion for leave [DE 29] to file an amended response. Plaintiff consented, and thus this Court granted [DE 31] the motion for leave and denied Plaintiff's motion to strike as moot. Plaintiff did not file a second motion to strike Defendant's amended Response, despite the fact that it again asserted the "new and different grounds" for removal.

ent.") (quoting *Vicksburg S. & P. Ry. Co. v. Nattin*, 58 F.2d 979, 980 (5th Cir.1932)).[8]

More recently, the Eleventh Circuit concluded that injunctive relief was not of any monetary value to plaintiffs, and thus could not be considered when calculating the amount in controversy, because the plaintiffs would be able to avoid paying for the insurance at issue. *Leonard*, 279 F.3d at 973. Other courts have also concluded that such contingencies render injunctive relief too speculative to be considered for amount in controversy purposes. *See, e.g., Mitchell v. GEICO*, 115 F.Supp.2d 1322, 1327 (M.D.Ala.2000) (stating that the monetary benefit of the subject injunction would materialize only if the plaintiff continued to maintain insurance through the defendant company and concluding that such a contingency raises only hypothetical situations).

In valuing injunctive relief, it is important to consider what tangible benefits the plaintiffs are obtaining through an injunction. Again, such benefits are to be considered from the plaintiff's viewpoint. *Morrison*, 228 F.3d at 1268. The cost of the injunction to the defendant is irrelevant. *Id.* at n. 9. "Plaintiffs will not gain financially because [a defendant] loses financially." *Crawford v. Am. Bankers Ins. Co. of Fla.*, 987 F.Supp. 1408, 1415 (M.D.Ala. 1997). For example, when considering the value of injunctive relief in *Mitchell*, the court determined that the individual plaintiffs were concerned primarily with the compensatory damages involved. *Mitchell*, 115 F.Supp.2d at 1327. In other words, plaintiffs were simply concerned with the compensatory damages each would receive for damages suffered in the

past and not with the prospective injunctive relief of the class as a whole. *Id.; see also Crawford*, 987 F.Supp. at 1415 (stating that the possible injunctive relief to plaintiffs meant nothing monetarily and that their financial recovery came not from the injunctive relief but from their tort and equity claims).

With this background in mind, it becomes clear that Defendant has not met its burden in demonstrating that the requested injunctive relief is sufficiently measurable and certain and in excess of $75,000. The gist of Defendant's claim is that the value of injunctive relief "easily exceeds $75,000 and is not at all speculative." Defendant's Response, at 18. However, Defendant does little to elaborate on and does not provide evidence for this claim. In fact, the only support it offers regarding the aggregate value of injunctive relief is that it is scheduled to receive $115,200 in premiums for the month of April 2004. Yet this claim sheds little light on the aggregate value, as it includes the total amount of premiums Defendant is scheduled to receive and not simply the amount of allegedly improper increases.

Furthermore, the Defendant's discussion of the value of injunctive relief to the individual Plaintiff reveals that Defendant's argument is based on speculation and nothing more. First, Defendant bases its calculation of individual injunctive relief on the amount of money Plaintiff is now paying in excess of the original premium amount. *See* Notice of Removal, at ¶ 19. As this Court already concluded, such a calculation is incorrect because it includes both proper and improper premium increases, while Plaintiff is only contesting

---

**8.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

the improper increases. Defendant is also assuming that the premiums will never again properly increase, but will stay at the amount Plaintiff is currently paying. Thus, from the start Defendant is using skewed calculations.

■ In addition, Defendant is assuming that Plaintiff will remain insured for the remainder of his life expectancy. *See* Notice of Removal, at ¶ 20. Because Plaintiff's life expectancy is age 83, while by its own terms the policy expires at age 65, this is an outlandish assumption. In fact, there are a number of contingencies that could cause Plaintiff's policy to terminate. For example, Plaintiff could switch insurers, become insured through a new employer, or reach age 65. *See* Motion, at ¶ 28. Defendant itself could cause this relationship to terminate by cancelling Plaintiff's policy, discontinuing the policy form for all plaintiffs, or going out of business. *Id.* If Plaintiff's membership in AAEPT terminates, the relationship would end. *Id.* In addition, the policy terminates if Plaintiff ever lives or works outside of the United States for sixty consecutive days. *Id.* These contingencies are analogous to those in *Morrison* and *Mitchell,* and likewise render the injunctive relief immeasurable and too conjectural to ascertain its value. Moreover, these contingencies demonstrate that Plaintiff as well as other class members will be able to avoid paying for this insurance, regardless of whether an injunction is granted. *See Leonard,* 279 F.3d at 973.

Finally, it is apparent that Defendant is measuring the value of injunctive relief from its own standpoint and not the standpoint of the Plaintiff. Defendant merely recites the sums it will not be receiving from Plaintiff if the injunction is granted. All in all, Defendant has failed to demonstrate the value of injunctive relief to any degree of certainty and thus that relief cannot be considered for amount in controversy purposes.

Because the Court has already determined that the value of injunctive relief cannot be considered for amount in controversy purposes, Defendant's argument in favor of aggregation is moot. See *Leonard,* 279 F.3d at 973. However, an examination of Defendant's aggregation argument reveals that, even if the injunctive relief could be considered, the claims cannot be aggregated and remand is in order.

■ "[T]here are situations in which multiple plaintiffs have a *unified, indivisible interest in some common fund* that is the object of litigation, permitting them to add together, or "aggregate," their individual stakes to reach the amount in controversy threshold." *Morrison,* 228 F.3d at 1262 (emphasis added). Such a "common and undivided interest" is uncommon and exists only when a defendant owes an obligation to the group of plaintiffs and not to the plaintiffs severally. *Id.; see also Klempner,* 196 F.Supp.2d at 1238. Whether or not claims may be aggregated is determined by the nature of the right asserted and not by the relief requested. *Morrison,* 228 F.3d at 1264. Furthermore, "when multiple plaintiffs assert rights arising from individual insurance policies, their claims are separate and distinct, and accordingly, may not be aggregated." *Id.* Generally, claims asserted in actions for breach of contract are considered separate and distinct. *Hall v. ITT Fin. Serv.,* 891 F.Supp. 580, 582 (M.D.Ala. 1994).

In *Klempner,* a group of plaintiffs brought suit against Northwestern Mutual Life Insurance Company claiming an un-

lawful failure to pay annual dividends on their policies. *Klempner*, 196 F.Supp.2d at 1234. Northwestern subsequently removed the action to federal court. *Id.* at 1235. In finding that the court lacked subject matter jurisdiction, the court concluded that, because the claims did not implicate "a single indivisible res" and could be adjudicated on an individual basis, a common fund did not exist. *Id.* at 1242. The court also noted that each putative class member held an individual insurance policy and that a favorable outcome would lead to damages under each individual's policy. *Id.*

Likewise, in *Sigel v. General Dev. Corp.*, the court concluded that the plaintiffs' claims were not joint and dependant and thus could not be aggregated, as each member of the putative class derived a legal right or claim from his own individual contract with the defendant. 59 F.R.D. 577, 582 (M.D.Fla.1973). *See also Hall*, 891 F.Supp. at 583 (noting that plaintiff sought relief so that she and other class members could avoid injury to themselves separately and concluding that the claims against defendants were based on individual contracts and did not constitute an integrated right); *Harris v. Physicians Mut. Ins. Co.*, 240 F.Supp.2d 715, 719 (N.D.Ohio 2003) ("Here, the class members' rights are not common and undivided, because they could maintain individual actions against the defendants.... not only the class *as a whole* is entitled to the requested relief.") (emphasis in the original).

Here, however, Defendant contends that the putative plaintiffs do not hold individual policies; instead, one policy was issued to AAEPT, and the plaintiffs thereafter received certificates of insurance. Defen-

dant's Response, at 16. However, in *Davis v. Crown Life Ins. Co.*, the Eleventh Circuit adopts the reasoning of *Rucks v. Old Republic Life Ins. Co.*, 345 So.2d 795 (Fla. 4th DCA 1977). *Davis*, 696 F.2d 1343, 1345 (11th Cir.1983). Specifically, the Circuit quotes, "under group life insurance policies there is a contract between the insurer and the individual insured...." *Id.* (quoting *Rucks*, 345 So.2d at 796). Such a situation is analogous to the situation at hand. Even though one group policy was issued to AAEPT, Defendant maintains an individual policy with each individual insured plaintiff.

█ After it is determined that each putative plaintiff holds an individual policy, it is clear that aggregation is improper. Each plaintiff holds an individual interest in the group policy. The plaintiffs paid premiums individually and were individually harmed. If the outcome is favorable, each plaintiff will individually receive the amount of damages equal to the amount each expended. There is no "single indivisible res," and as such, if one plaintiff is for some reason unable to receive his due compensation, his award would not pass to another class member as it would if the plaintiffs had an indivisible interest. Each plaintiff's claim could be adjudicated on an individual basis. Furthermore, Plaintiff's claim is for breach of contract, and claims in such actions are generally considered separate and distinct. In addition, Defendant's arguments focus mainly on the requested relief, while it is the nature of the right asserted that controls. Defendant simply has not met its burden in demonstrating a "unified, indivisible interest in some common fund."[9]

Based on the foregoing conclusions and the fact that any doubt is to be resolved in

---

**9.** *See Morrison*, 228 F.3d at 1271 ("In this case, the rights asserted arise from the class

members [sic] individual insurance policies with one of the defendants, and the requested

favor of remand, this Court must remand this action to the Fifteenth Judicial Circuit in and for Palm Beach County. Defendant has requested that this Court, in the alternative and pursuant to 28 U.S.C. § 1292(b), certify for immediate appeal the issue of whether the amount in controversy requirement may be satisfied by claims of unnamed class members. Section 1292(b) provides that this Court may certify for appeal an order involving a controlling issue of law as to which there is substantial ground for difference of opinion and if such an immediate appeal would materially advance the ultimate termination of the litigation. This Court finds that such an action is inappropriate, as it has already concluded that the Eleventh Circuit decision in *Allapattah* makes it clear that the amount in controversy must be satisfied by a class representative. Such certification would not materially advance the ultimate termination of this litigation. Moreover, even if there were ground for difference of opinion, such doubt is to be resolved in favor of remand.

■ Plaintiff has requested an award of costs and fees incurred as a result of the removal. Because it does not appear that Defendant removed this cause in bad faith, that request is denied.

### III. Conclusion

This Court, having considered the motion and the pertinent portions of the record, and being otherwise fully advised in the premises, does hereby

ORDER AND ADJUDGE that Plaintiff's Motion for Remand [DE 14] is GRANTED. This action is hereby RE-MANDED to the Fifteenth Judicial Circuit in and for Palm Beach County.

---

injunction seeks to protect against future violations of those individual rights. Thus, the claims for injunctive relief are separate and distinct, and they may not be aggregated to establish the requisite amount in controversy.").